RICHARD B. DAVIS & another *vs.* COUNTY COMMISSIONERS OF HAMPSHIRE.

Hampshire.    September 16, 1890. — February 24, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, KNOWLTON, & MORTON, JJ.

*Certiorari — County Commissioners — Crossing of Way by Railroad — Separation of Grade.*

A landowner in a city, the direct approach to whose estate by a public street from the principal business section of the city is cut off by the separation at a crossing of the grades of the street and a railroad, and by a discontinuance of the street within the railroad location, resulting in a serious and permanent injury to the estate as well as to others in the vicinity, cannot maintain a petition for a writ of certiorari to quash the proceedings of the county commissioners in abolishing the grade crossing, either on his own behalf or because of an injury to the city.

Under the Pub. Sts. c. 112, §§ 120, 129, 130, county commissioners, in ordering the separation at a crossing of the grades of. a railroad and a highway, may

change the highway to a place different from that of the existing crossing, if the change is not greater than is reasonably necessary in order to do away with the crossing at grade.

PETITION, by Richard B. Davis and Theodore Rust, for a writ of certiorari to quash the proceedings of the county commissioners of Hampshire in abolishing the crossing at grade of South Street in the city of Northampton by the New York, New Haven, and Hartford Railroad. The case was heard and reserved for the consideration of the full court by *Knowlton*, J., and was as follows.

South Street in Northampton was a public highway, extending in a southerly direction from Main Street and crossing at grade the location and tracks of the New York, New Haven, and Hartford Railroad Company, which had succeeded to the rights therein of the New Haven and Northampton Company, and thence proceeding across Mill River and past Maple Street and Fruit Street on the east, and Clark Avenue and School Street on the west, to Easthampton. A plan, a copy of which is printed on the next page, shows the location of South Street, the change proposed to be made in the crossing, and the relation of South Street to the railroad, to Mill River, and to other streets. On November 14, 1889, the mayor and aldermen of Northampton presented a petition to the county commissioners, representing that the petitioners were of opinion that it was " necessary for the security and convenience of the public that an alteration should be made in said crossing and in the approaches thereto, and in the highways at said place, so that said crossing shall not be at grade," and requesting the commissioners to " prescribe the manner and limits within which it shall be made." The commissioners, after notice, view, and a hearing, did, on January 10, 1890, as recited in their order, " adjudicate in favor of a separation of grade at said South Street, as prayed for in said petition," and on January 22, 1890, " did determine to locate a crossing of the highway over the railroad substantially in the manner and at the place designated in the evidence offered at the hearing, and the plans shown, as the upper route," which route is indicated on the plan by the words " Proposed Change." The commissioners then proceeded to " prescribe the manner and limits within which said alteration shall be made

in the highway at the crossing of aforesaid railroad, the approaches thereto, and the location of the highway at the same," and to specify the details of the same. Their order concluded as follows: "And now it is ordered by said commissioners that said highway and separation of grade be made, and completed in accordance with the statutes in such cases made and provided, and in manner set forth in this decree and the foregoing specifications, and as shown on the annexed plan and profile,

which are made a part of this report and decree, and to the acceptance of the county commissioners, on or before the first day of October, A. D. 1891."

The plan and profile showed that the proposed separation of grade was to be effected by constructing a new piece of highway from a point on South Street, at or near School Street, about nine hundred and fifty feet from the grade crossing, to a new junction with Main Street, about seven hundred and fifty feet westerly from the old junction of that street with South Street, the same to consist of an embankment, and a bridge over Clark Avenue, and another bridge over Mill River and the railroad, at a height in the clear of about twenty feet above the latter. The petitioners were the owners of estates situated south of Mill River and on the westerly side of South Street, between the river and a point opposite Fruit Street; and these estates, as was averred and proved, would be seriously and permanently injured by the carrying out of the order of the county commissioners. South Street on both sides of the grade crossing had been used by the public from time immemorial for many other purposes of travel besides that of an approach to the grade crossing, and by many persons having occasion to travel on the intersecting streets named and others, and there were many other estates on South Street, near the petitioners, similarly situated and affected. The petitioners averred that the city of Northampton was injured by the taking for the new piece of way of a narrow strip of land conveyed by deed to the city for schoolhouse purposes. The petitioners also averred in the petition, and contended at the hearing, that the nature and legal effect of the order of the county commissioners was to discontinue that portion of South Street on which their estates abutted, and that they were entitled to damages and to maintain the petition.

The respondents contended, that the effect of the order was to discontinue only so much of South Street as was within the location of the railroad at the grade crossing; and that the petitioners had no such interest in the subject as entitled them to maintain the petition.

*G. Wells*, for the petitioners.

*J. C. Hammond*, (*H. P. Field* with him,) for the railroad company.

C. ALLEN, J.    The New York, New Haven, and Hartford
Railroad Company, having been allowed to take part in the
argument in support of the order of the county commissioners,
contends that the petitioners have no such standing or interest
in the matter in controversy as to entitle them to be heard in
court.

The petitioners aver that their lands are situated upon that
part of South Street which will be discontinued if the order of
the commissioners is legal and is carried into effect, and that
they would be entitled to recover damages therefor.    There
was, however, no order which in terms discontinued any part of
South Street, and their order will not have the effect, by impli-
cation, to discontinue any part of the street except such as is
necessarily discontinued by the giving up of the crossing.    The
order that an alteration be made in the crossing, so that it shall
not be at grade, necessarily implies a discontinuance of so much
of the street as is within the location of the railroad ; and
there is nothing to show an intention to discontinue anything
further.

The petitioners, indeed, do not in their brief contend that the
street is discontinued opposite to their lands, but only that their
lands before the change were upon a thoroughfare, and, if the
contemplated change is made, will be upon a *cul de sac.*    A
reference to the plan shows that their lands are upon the south
side of Mill River, while the crossing which the commissioners
have ordered to be discontinued is upon the north side, and the
discontinuance will cut off the direct route from these lands in a
northerly direction to the principal business streets of North-
ampton, and make it necessary to resort to a circuitous route
through other streets.    The petitioners aver that their real
estate will be seriously and permanently injured by the carrying
out of the order, and the justice before whom the case was
heard has found this averment to be proved.    The injury results
from cutting off the direct approach to their lands by the pub-
lic street in one direction.    Is this such an injury as gives them
a standing to be heard individually on a petition for a writ of
certiorari ?

The general doctrine is familiar, that, ordinarily, one cannot
maintain a private action for a loss or damage which he suffers

in common with the rest of the community, even though his loss may be greater in degree. A difficulty sometimes arises, however, in applying this doctrine to a particular case. In *Smith* v. *Boston,* 7 Cush. 254, it was held that the discontinuance of part of a street in a city, whereby the value of lands abutting on other parts of the street is lessened, is not a ground of action against the city by the owner of such lands, if the same are still accessible by other public streets. The court say: " The inconvenience of the petitioner is experienced by him in common with all the rest of the members of the community. He may feel it more, in consequence of the proximity of his lots and buildings; still it is a damage of like kind, and not in its nature peculiar or specific. . . . The petitioner has free access to all his lots, by public streets. The burden of his complaint, therefore, is, that in going to some of his houses, in some directions, he may be obliged to go somewhat further than he otherwise would. So must the inhabitant of the south end of the city, or the citizens of other towns, with their teams or carriages, who would have had a right to use the discontinued way." The court, however, take pains to say, that, if all access to an estate by public streets is cut off, the rule might not apply, and that in such case the owner might perhaps have a claim for damages; and this has been expressly decided in Minnesota. *Brakken* v. *Minneapolis & St. Louis Railway,* 29 Minn. 41. The doctrine of *Smith* v. *Boston* was expressly reaffirmed in *Castle* v. *Berkshire,* 11 Gray, 26. In *Willard* v. *Cambridge,* 3 Allen, 574, a demurrer was sustained to a declaration which alleged that the city of Cambridge had taken up the planks of a drawbridge forming a part of a public highway, and thereby obstructed the travel to the plaintiff's wharf, and rendered less desirable his houses occupied by tenants, so that he was obliged to abate from his rents. The court say, " Every person owning property on the highway leading to the bridge . . . sustained a similar injury." The case of *Stetson* v. *Faxon,* 19 Pick. 147, is distinguished by the fact that there the nuisance causing the obstruction to the plaintiff's premises was erected directly against and abutting on the estate of the plaintiff, and diverted travel therefrom. *Williams* v. *Tripp,* 11 R. I. 447, much resembles *Stetson* v. *Faxon.*

The same principle has also been applied in cases of obstructing navigable waters. In *Brightman* v. *Fairhaven*, 7 Gray, 271, the plaintiff's land, situated upon a navigable stream, was injured by the construction of a dam across the stream in such a manner as to obstruct the floating up of spars; and it was held that he could not maintain an action therefor. *Clark* v. *Saybrook*, 21 Conn. 313, is substantially like *Brightman* v. *Fairhaven*. In *Harvard College* v. *Stearns*, 15 Gray, 1, it was held that the owner of a wharf cannot maintain an action for illegally filling up a navigable creek, whereby the wharf was rendered more difficult of access and less valuable. In *Blackwell* v. *Old Colony Railroad*, 122 Mass. 1, it was determined that no action lies to recover damages for the obstruction of a navigable stream by building a bridge across it, whereby the owner of a wharf situated above the bridge was cut off from approaching the wharf in vessels, and its value was thereby lessened, although his wharf was the only one above the bridge used for business purposes. In *Brayton* v. *Fall River*, 113 Mass. 218, it was held that the owner of a wharf upon a tide-water creek could not maintain an action for an illegal obstruction to the navigation of the creek, whereby his wharf was rendered less valuable, this being an injury of the same kind sustained by all other persons who had occasion to use the creek, or who owned land bordering upon it; but that he might maintain an action for an obstruction directly in front of and adjoining his wharf, which prevented vessels from lying at it in the accustomed manner, this being deemed a special and peculiar damage to him. This same distinction was also observed in *Garitee* v. *Mayor & City Council of Baltimore*, 53 Md. 422, and in *French* v. *Connecticut River Lumber Co.* 145 Mass. 261. So in England, where the plaintiff's premises were separated from a public dock in the Thames only by a highway, and the dock was destroyed by the erection of the Thames Embankment, so that the plaintiff was cut off from access from his premises to the river, he was held entitled to damages for the same reason. *Metropolitan Board of Works* v. *McCarthy*, L. R. 7 H. L. 243, L. R. 8 C. P. 191, and 7 C. P. 508.

Without dwelling upon other decided cases in Massachusetts, or elsewhere, we are of opinion that the petitioners would not be entitled to recover damages for the diminished value of their

lands, that being a loss not peculiar to themselves, but the same in kind as that which is suffered by others who owned lands situated upon the same street, or other streets contiguous thereto. Although the doctrine may sometimes be rather harsh in its application to special cases, there are sound reasons on which it rests. The chief of these reasons are, that to hold otherwise would be to encourage many trivial suits, that it would discourage public improvements if a whole neighborhood were to be allowed to recover damages for such injuries to their estates, and that the loss is of a kind which purchasers of land must be held to have contemplated as liable to occur, and to have made allowance for in the price which they paid.

If, then, the petitioners could not maintain a private action for damages to their lands, it remains to be determined whether they are entitled to have a private remedy for setting aside the proceedings of the county commissioners in making the contemplated change in the crossing. In *Chandler* v. *Railroad Commissioners*, 141 Mass. 208, there had been an application to the county commissioners to make extensive alterations in a bridge which constituted part of a public highway, and crossed over a railroad track. A taxable inhabitant of the town, who owned land abutting upon the highway at some distance from the bridge, was admitted by the county commissioners as a party entitled to be heard before them; and he sought to take an appeal from their order, and to be heard thereon before the railroad commissioners, to whom any party aggrieved was allowed by statute to take an appeal. It did not appear that his land would be lessened in value by the contemplated change, and in that respect the case differed from the case now before us. The court held that he was not entitled to take an appeal. In *Brainard* v. *Connecticut River Railroad*, 7 Cush. 506, the plaintiffs sought to enforce an order of the county commissioners for the construction of a bridge which was to form part of the highway over a deep cut made by the railroad company for the railroad track through land of the plaintiffs, who owned land on each side of the railroad. They alleged damages, in being deprived of the use of the highway as a passage to and from their lands on each side of the railroad, and also in being deprived of a convenient access from the west side of the railroad

to the business part of the village of Greenfield. The court held that they were not entitled to a private remedy.

In the present case, inasmuch as the petitioners are not entitled to a private remedy for damages, we think they are not entitled to maintain a petition for a writ of certiorari to quash the proceedings of the county commissioners.

The question of the power of the county commissioners to pass the order complained of has also been fully argued, and we have considered it. The petitioners contend that the order amounts to a location of a new highway, and that the change made is more extensive than the statute authorized them to make.

The St. of 1872, c. 262, § 1, provided that, if the mayor and aldermen of a city, or the selectmen of a town, wherein a highway or town way which crossed or was crossed by a railroad was situated, or the directors of any railroad corporation whose road crossed or was crossed by such way, were of the opinion that it was necessary for the security or convenience of the public "that the approaches to or method of such crossing should in any way be altered," the county commissioners, if they should decide that such alteration was necessary, should prescribe the manner and limits within which it should be made. Under this statute, it was determined by this court that the alterations which the county commissioners had power to order must be made within the limits of the existing highway. *Lancaster* v. *County Commissioners*, 113 Mass. 100. The St. of 1874, c. 305, § 1, amended the above provision by striking out the words above placed in quotation marks, and inserting in place thereof the following: "that any alteration should be made in such crossing, or in the approaches thereto, or in the method of such crossing, or in the location of the railroad or in the location of the highway or town way, or in any bridge at such crossing." Section 2 provided that, if the county commissioners decided that the location of the railroad or of the highway or town way should be changed, land might be taken therefor. By the general railroad act, passed in the same year, (St. 1874, c. 372,) the general policy was established of avoiding crossings at grade as far as possible, and to this end changes in the course of highways were authorized by §§ 86, 89. The provisions of the St. of 1874, c. 305, §§ 1, 2, were incorporated in §§ 96, 97, and

afterwards in the Pub. Sts. c. 112, §§ 129, 130, where the language is compressed, but with no change of meaning. These statutes must be read in view of their obvious purpose to do away, as far as possible, with crossings at grade. It is also to be observed, that it is provided in the Pub. Sts. c. 112, § 120, that no bridge over a railroad shall be constructed at a height less than eighteen feet above the track, except by consent in writing of the board of railroad commissioners. To get such a difference in the grade, it may be important to change the highway to a place at some distance from the existing crossing. It is often inconvenient to change the grade of a railroad, and, if a crossing at grade is to be done away with, it often may be much more practicable to change the grade of the highway than of the railroad. *Boston & Albany Railroad* v. *County Commissioners,* 116 Mass. 73, 76.

The statute expressly contemplates that it may be necessary to make an alteration in the location of the highway. Some change certainly may be made. It is not necessary to keep strictly within the limits of the existing highway. At least, the highway may be widened. But the language of the statute is also broad enough to admit of a larger construction than this. It may be necessary that the highway should be deflected so that for a short distance it will be wholly outside of the original location. Then within what limits must such change be confined? This it is not easy to define. It may be said, in general terms, that under the guise of doing away with a crossing at grade, the authority of the commissioners would not extend further than to do what is reasonably necessary to accomplish the purpose, in view of the situation of the ground, and of other circumstances. The fact that a location is so changed that the original highway is not again entered before another street is reached, is not of itself decisive. Each case must be determined by its own circumstances. In the present case we find nothing to show that the change was any greater than was necessary in order to do away with the crossing at grade. There has been no suggestion that any simpler scheme would have been practicable. The argument addressed to us has been merely that the authority given by the statutes did not extend so far as to warrant the change which was ordered. It may therefore be taken

for granted, that the scheme is not open to criticism on the ground that it is more of a departure from the original existing highway than was necessary. There is no technical and arbitrary limitation of authority, such as is contended for. All that can be said is, that the county commissioners must not depart unreasonably from the existing highway, or more than is reasonably necessary in order to make a safe and convenient crossing over or under the railroad. In order to warrant the interference of this court, it must be made to appear that they have ordered a change which is unreasonable and unnecessary. In the present case this does not appear.

The St. of 1890, c. 428, makes a clear provision for discontinuing a portion of an existing public way, or for changing the location thereof when necessary, in order to avoid crossing at grade. That statute, however, is not applicable to the present case.

The petitioners further aver that there was also an injury to the city of Northampton by taking a part of a schoolhouse lot; but it is hardly necessary to say that this objection is not open to these petitioners, and it has not been much pressed in the argument. *Brighton* v. *Wilkinson*, 2 Allen, 27, 32. *Hingham & Quincy Bridge* v. *Norfolk*, 6 Allen, 353.

The result arrived at by a majority of the court, upon both grounds, is that the entry must be,　　　　*Petition dismissed.*