[No. 18159.   Department Two.—January 26, 1894.]

LEVEE DISTRICT NO. 9, APPELLANT, v. L. P. FARMER ET AL., RESPONDENTS.

HIGHWAYS—ALTERATION OF LINE OF ROAD—ORDER VACATING PORTION—POWER OF SUPERVISORS.—Where a petition for the establishment of a new line of road, and the vacation of a portion of an old road about two miles in length, was signed by the required number of qualified persons, and the description of the road sought to be established and the one to be vacated was definite, and did not show that they were disconnected matters which ought not to be or could not be joined in the same proceeding, and the surveys and descriptions of the new road and the old road show that the new road is but an alteration of the old, making a portion of the old road unnecessary, and that the divergence is in no

place considerable, the board of supervisors have jurisdiction to make an order for laying out and establishing the new road and vacating part of the old road.

ID.—JUDICIAL FUNCTIONS OF BOARD—COLLATERAL ATTACK—REVIEW OF JUDGMENT.—As to all facts tending to show whether the power of the board ought or ought not to be exercised, either by granting or denying the petition in whole or in part, the board exercises judicial functions, and its judgments are final, and cannot be attacked collaterally, but may be reviewed upon *certiorari*, where the jurisdiction of the board has been exceeded.

ID.—CONSTITUTIONAL LAW—COMPENSATION TO ABUTTING OWNERS—VACATION OF ROAD.—The rights of abutting owners upon a public road which has not been dedicated by the owners of the land, and in respect to which there are no contract rights, or trust obligation of the public, are not such property as under the constitution must be paid for upon vacation of the public road, and the provisions of the Political Code conferring power upon the board of supervisors to vacate public roads are not unconstitutional, because not authorizing the board to assess the damages caused thereby to abutting owners, nor to provide for compensation to them.

ID.—EASEMENT FOR BENEFIT OF PUBLIC—ABUTTERS SUBJECT TO STATUTORY PROVISIONS.—The creation of highways by use, or under the statute, creates an easement for the benefit of the public for such time only as the public necessities and convenience may require, and creates no covenant or obligation in favor of an abutter that it shall always exist; and an abutter must be held to have acquired and improved his property in view of the fact, that the statutes which provide for the establishment and maintenance of highways also provide for vacating the same.

ID.—CESSATION OF PUBLIC USE.—The public use ceases upon vacation of the highway, and an injury to an abutting owner consequent upon such ending of the use cannot be held to be a taking or damaging for a public use, but such injury is *damnum absque injuria*.

APPEAL from a judgment of the Superior Court of Sutter County.

The facts are stated in the opinion.

*M. C. Barney,* and *W. T. Phipps,* for Appellant.

*District Attorney A. C. McLaughlin, W. H. Carlin,* and *M. E. Sanborn,* for Respondents.

HAYNES, C.—Appellant brought this action against the individuals composing the board of supervisors of Sutter county, two persons who were overseers of road districts, and others who were owners of lands through which a certain road ran, to enjoin them from closing up or vacating said road.

Appellant is a corporation organized to maintain a levee along a portion of Feather river, to prevent overflows, and the part of said road in question is contiguous, for the greater part of its distance, at least, to the levee, and the complaint alleges that it is the only inlet or outlet to the levee for the purpose of protecting or repairing the same, and charges that the defendants are preparing and threatening, and will, unless restrained by the court, fence, plow up, and destroy the same, without any legal right or authority so to do, to plaintiff's great and irreparable damage.    The prayer is for a temporary restraining order, and a perpetual injunction.

The answer of defendants, in addition to denials, alleged that on January 6, 1892, the board of supervisors ordered the road abandoned and discontinued, such order to take effect May 1, 1892.

Upon the trial defendants had findings and judgment in their favor, from which judgment the plaintiff appeals.    The facts appear in a bill of exceptions.

At the commencement of the trial counsel for defendants suggested that if the orders of the board of supervisors alleged in the answers were valid, that would dispose of the case, and proposed that the first proofs be directed to that issue; to which counsel for plaintiff assented.    The proceedings of the board were thereupon put in evidence by defendants, and plaintiff put in no evidence whatever.    The principal question, therefore, is as to the validity of the order vacating the road.

Appellant attacks the validity of the order mainly upon two grounds: 1. That the petition upon which the proceedings were based was for laying out and establishing a new road and vacating an old one, and that it did not appear from the proceedings that there was any connection or relation between the two, as that the construction of the new road rendered the old unnecessary.

It requires neither discussion nor authority to sustain the proposition that two wholly disconnected objects cannot properly be joined in the same proceeding and order; and while these proceedings do not expressly or in direct

language show that the new road is but an alteration of the old, making a portion of the old road unnecessary, the surveys and descriptions of the new road and the old which were put in evidence sufficiently show that fact. The portion of the old road vacated is about two miles in length, and the point where the new diverges from it at one end and unites with it at the other are given, whilst the courses of the surveys show that the divergence is at no place considerable, perhaps not exceeding forty rods.

The petition was signed by the required number of qualified persons, the description of the road sought to be established and the one to be vacated were definite, and did not show that they were disconnected matters which ought not, or could not, be joined in the same proceeding, and as to all facts tending to show whether the power of the board ought or ought not to be exercised, either by granting or denying the petition in whole or in part, the board exercises judicial functions (*Damrell* v. *San Joaquin Co.*, 40 Cal. 158; *In re Grove Street*, 61 Cal. 453; *Waugh* v. *Chauncey*, 13 Cal. 11); and its judgments are final and cannot be attacked collaterally, but may be reviewed upon *certiorari* where the jurisdiction of the board has been exceeded. (*Fall* v. *Paine*, 23 Cal. 303; *Murray* v. *Supervisors*, 23 Cal. 495; *Damrell* v. *San Joaquin Co.*, 40 Cal. 154; *Bixler* v. *County of Sacramento*, 59 Cal. 701.) This disposes of all the objections to the introduction of the records, except the second, now to be noticed, and upon which appellant principally relies, viz: That the provisions of the Political Code which purport to confer the power upon the board of supervisors to vacate public roads are unconstitutional, because they do not authorize the board to assess the damages caused thereby to abutting owners, nor in any manner provide for compensation to them, and that the rights of such abutting owners are property which under the constitution cannot be taken away or damaged without compensation.

We are not cited to any case in this state where the

question thus made has been called to the attention of the court or decided.

Appellant cites Elliott on Roads and Streets, page 114; but this citation has no material bearing upon the question. The author is there discussing the rights of abutting owners arising from the *dedication* of streets by the owner of the soil, and improvements made on the faith of such dedication, as is clearly shown by the cases cited in the footnote. One of these cases (*Story* v. *New York Elevated R. R.*, 90 N. Y. 122) was where the city owned certain lands, and surveyed and platted them into lots and streets, and sold them, the deeds therefor containing a covenant on the part of the grantor to make the streets, which "shall forever thereafter continue and be for the free and common passage, and as public streets and ways for the inhabitants and all others," etc., and it was held that the covenantees could not be deprived of the street without compensation.

Another case cited is *Le Clercq* v. *Trustees of Gallipolis*, 7 Ohio, 218. There the corporation owned the lands and platted them, and designated a certain portion as a public square, placed a value on the lots at which they were sold, the value of those on the public square being higher "because it was forever inalienable and to be kept open"; and it was held "that where land is dedicated to the use of the inhabitants of a town, one, or more, especially one whose property is affected in value, may enforce the execution of the trust."

In the first of these cases the right of the abutter rested upon a covenant in his deed from the city, and in the second upon a trust created for his benefit, which the trustee could not disregard. Here, however, there was no dedication, nor any covenant on the part of the public, nor any trust in the public of *the land* upon which the road was laid for the use of the appellant, or of the public. Whatever trust existed in the state was of an easement, not for the use or benefit of appellant, but for the use of the public, to continue for such time only as the use thereof by the public should be necessary; but

it does not appear probable that the levee was built because the road was there, or on the faith that it would never be vacated, but because the river was there and likely to overflow; and, therefore, appellant is not within the authority he cites.

Appellant, however, cites us to the statement of the same author at page 662, where the broad proposition is asserted, that " the right which an abutter enjoys as one of the public and in common with other citizens is not property in such sense as to entitle him to compensation on the discontinuance of the road or street, but with respect to the right which he has in the highway as a means of enjoying the free and convenient use of his abutting property, it is radically different, for this right is a special one.   If this special right is of value— and it is of value if it increases the worth of his abutting premises—then it is property, no matter whether it be of great or small value. . . . . For this reason we think the discontinuance or vacation of a street in such manner as to prevent access to the property of an adjoining owner is a ' taking ' of property within the constitutional inhibition, and cannot be lawful without compensation to such owner."   The cases cited by the author do not sustain the proposition. *Cincinnati* v. *Lessees of White*, 6 Pet. 431, was where lands were dedicated and set apart "forever" as a common.

*Petition of Concord*, 50 N. H. 530, was under a statute which provided: " On petitions for discontinuance of highways referred to the county commissioners, if they report for the discontinuance, they shall assess the damages occasioned to any person thereby."

*The Common Council of Indianapolis* v. *Croas*, 7 Ind. 9, related to an alley in the city, and it was held that real estate *dedicated* for a street or alley could not be reclaimed by the donor without the consent of the owners of the property adjoining such street or alley. The court in its opinion called attention to the distinction between the modes of establishing streets in a town and of common roads; that the former is a dedi-

cation by the owner, and the latter by appropriating private property to a public use by the state, by the exercise of the right of eminent domain.

*Haynes* v. *Thomas*, 7 Ind. 38, was also a case involving the dedication of land for a public street, and in no way bears upon the question now under consideration.

The case cited from 50 Ind. 537, *Butterworth* v. *Bartlett*, arose under a statute which provided that upon the vacation of a highway, one through whose land the highway passed, who should be injured by the vacation of it, should be entitled to damages for such injury.

Two other cases cited by the author related to the right of an owner, whose lot abutted on a street, to damages resulting from the use of the street by railroads, such use being an additional servitude.

The only case cited by the author in which the question at bar was discussed is *Pearsall* v. *Supervisors*, 74 Mich. 558, and the opinion in that case concludes as follows: " The statute of 1887, at page 185, recognizes the right of Mrs. Pearsall to her damages in this case, and has undertaken to provide a mode for obtaining them, but is not the one authorized by the constitution." The reporter adds in a footnote that the act provided for a jury of six freeholders instead of twelve.

The cases of *Schaufele* v. *Doyle*, 86 Cal. 107, and *Brown* v. *City of Seattle*, 5 Wash. 35, cited by appellant, were each cases of injury to abutting property resulting from a change of grade of an existing street in a city, whereby a change in the surface of the lot is made necessary to its convenient use and enjoyment, as by grading or filling, or changing approaches. In these cases, as in multitudes of others of like character, much is said about the rights and property of the abutting owner in the street, but what is said must be read in the light of the facts of each particular case. But no one questions that an abutter upon a country highway has an interest in the easement created for public use, but it does not follow that such abutter is entitled to damages upon the vacation of such highway, nor that

the vacation of it is a taking or damaging of private property for public use. The interest of each abutting owner is the same. Though it may be of greater use or benefit to one than to others, it is a common right, created in the same way, for the same purpose, of the same duration, and subject to be discontinued when the interests of the public, for whose benefit it was created, requires it, that is when it ceases to be necessary for public use.

The easement is created for the public, not for an individual, though an individual may have a private way even by condemnation; nor does the fact that a way may be necessary for a single abutter affect the conclusion that it is no longer necessary as a public road. If it were otherwise no public road could be vacated so long as it could be shown that it was necessary for a single abutter, and thus the public could be required to maintain what is in fact a private way. That an abutter may be injured by the discontinuance or vacation of the road is conceded, but " there is no contract with surrounding property owners that a public improvement shall always exist as at present; and no damages will be allowed for its discontinuance, notwithstanding improvements have been made on the supposition that they will remain, and notwithstanding property has been thereby enhanced in value." (Mills on Eminent Domain, sec. 317.) In Iowa the supreme court say. " We have held that the vacation of a highway does not take from an individual residing thereon his property either for public or private use, and that he cannot recover damages therefor, although he may sustain inconvenience and loss therefrom." (*Barr* v. *City of Oskaloosa,* 45 Iowa, 275.)

The supreme court of Pennsylvania said: " But by the vacation of Washington street no private property was taken or applied to public use"; and the court further held that the power of the legislature was not restrained in that regard by the provision in the constitution requiring municipal corporations to make

compensation for private property taken, injured, or destroyed by the construction or enlargement of their works, highways, or improvements, and which also provided that private property should not be taken or applied to public use without just compensation. (*McGee's Appeal*, 114 Pa. St. 477.)

The supreme court of Illinois said: "It is not true in fact or in law that defendant has either taken or damaged plaintiff's property for public use. It has taken no property for public or any other use. That of which complaint is made is vacating of certain streets. In no sense can that act be construed as either taking or damaging private property for public use, as those terms are used in the constitution." (*City of East St. Louis* v. *O'Flynn*, 119 Ill. 200.)

Whatever of apparent hardship there may be in particular cases where roads have been created by use when the country was new, as in this state, and for the temporary convenience of a sparsely settled country, a greater hardship would be entailed upon the public if those roads could not now be vacated or changed to meet the present changed situation without compensating those whose premises may abut thereon for the loss or inconvenience they may sustain, as, if that were the rule, none would consent to the change, and the added burden would be an embargo upon the creation of new and more desirable roads.

The creation of highways by use, or under the statute, creates an easement for the benefit of the public for such time only as the public necessities and convenience may require, and creates no covenant or obligation in favor of an abutter that it shall always exist; but, on the contrary, the statutes, while providing for the establishment and maintenance of highways, also provide for vacating the same, and abutters must be held to have acquired and improved their property in view of that fact, and hence no one can acquire a legal interest in it other than that which is common to all, and this common interest the authority relied upon by appellant

concedes does not entitle an abutter to damages upon the vacation of the road.

The public use ceases upon such vacation; and an injury to the appellant consequent upon such ending of the use cannot be held to be a taking or damaging for a public use.

The first order of the board of supervisors was valid, and the second order passed to meet an objection made by appellant was unnecessary, and did not affect the validity of the first.

The plaintiff having introduced no evidence, the findings were proper. If the fact, or extent, or amount of the injury sustained by appellant had been found by the court it would not avail to sustain a bill for an injunction, since it was *damnum absque injuria.*

The judgment appealed from should be affirmed.

VANCLIEF, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

McFARLAND, J., FITZGERALD, J., DE HAVEN, J.

Hearing in Bank denied.