## George G. Kachele *vs.* Bridgeport Hydraulic Company et al.

Third Judicial District, New Haven, January Term, 1929.

*Haines, Hinman, Banks and John Rufus Booth, Js.

Argued January 16th—decided April 18th, 1929.

* By agreement of counsel this case was heard by four justices.

152

*Sanford Stoddard,* for the appellant (defendant Town of Easton).

*Henry E. Shannon,* with whom was *Arthur J. Hull,* for the appellee (plaintiff).

HINMAN, J. The plaintiff alleged, in a substituted complaint, that he owns a tract of land abutting on a public highway which extended westerly to another highway known as Sport Hill Road, and thence to Tashua Road, a distance of about a mile and a half to Easton Center. The town of Easton discontinued a part of the highway west of the plaintiff's property, thereby cutting off access therefrom to the system of highways on the west, making it necessary for the plaintiff to pass through two or more neighboring towns in order to reach Easton Center, and causing a diversion of travel from his property and diminishing its value. The complaint was demurred to on the grounds that it appears therefrom that the discontinuance and vacation of the highway affected the plaintiff's property no differently from other property on the highway, and the damages suffered by the plaintiff are not so special and peculiar as to give him a right of action. The only question on this appeal relates to the ruling on this demurrer, and the general inquiry involved is whether one may recover compensation when a street or highway on which his property abuts is closed or vacated between his property and the next connecting street or highway on one side, so as to cut off access in that direction, while leaving access in front and in the other direction impaired. This, as stated in 1 Lewis on Eminent Domain (3d Ed.) § 202, "is one of the vexed questions of the law."

The diversity of views prevailing in different States is apparent from the cases cited to that section, and is demonstrated by a recent and thorough review of the cases on the subject collected in the annotation to *In re Hull*, 49 A. L. R. (1927) p. 330 *et seq.* (163 Minn. 439, 204 N. W. 534, 205 id. 613).

Following the doctrine adopted in Massachusetts in *Smith* v. *Boston*, 61 Mass. (7 Cush.) 254, recognized as a leading case on the subject, many States hold that, in such a situation, damage is not recoverable, although a considerable number adopt a contrary doctrine. 1 Lewis on Eminent Domain (3d Ed.) § 202; 20 Corpus Juris, p. 702.

In *Atwood* v. *Partree* (1888) 56 Conn. 80, 81, 14 Atl. 85, it was held that injury from the obstruction of a highway accruing to the owner of land adjoining a portion of the road other than that obstructed "cannot be called in any sense special or peculiar, or be said to differ at all in character from that which every member of the public experienced who had occasion to travel this road. The right which every man exercises who travels the highway for highway purposes, is a public right. It is common to all; and although the business of one man may be far more urgent than that of another, . . . still the character of the injury would seem to be the same in both cases, differing only in degree."

In *Newton* v. *New York, N. H. & H. R. Co.* (1899) 72 Conn. 420, 44 Atl. 813, this court definitely adopted and applied the general doctrine of *Smith* v. *Boston, supra.* It recognized (pp. 427, 428) that the easement of access, including "the right of ingress, egress, and regress," for an injury to which the abutting landowner could bring a private action, is confined to the street or highway in front of the lot, and held that "a remote obstruction, if it does not affect the

easement of access at that place, is not a legal injury or tort, even though the access be rendered more inconvenient, or a more circuitous route be necessitated." In that case, however, a new intersecting street was provided, between plaintiff's property and the vacated portion, so that the change did not cut off travel in either direction, but merely required travelers to or from the system of streets in one direction to take a somewhat longer route.

*Park City Yacht Club* v. *Bridgeport* (1912) 85 Conn. 366, 82 Atl. 1035, presented a quite different situation. The plaintiff owned a clubhouse upon the south side of a street which crossed an arm of the harbor on a causeway. The city tore down the part of this causeway just west of the plaintiff's premises and laid out a highway and constructed a bridge north of the highway, much higher in grade than the former highway and having a railing along its south side extending one hundred and fifty feet east of the entrance to the clubhouse. Thereby access to the plaintiff's property from the west was destroyed, from the north was prevented, and from the east seriously interfered with in that the remnant of street left between the plaintiff's property and the new raised and railed portion was so narrow as to prevent ordinary modern traffic coming to the premises unless it backed out the one hundred and fifty feet to the highway. "All traffic to and fro in front of plaintiff's premises, is absolutely shut off. In many ways this is a practical discontinuance of the highway." The court reaffirmed the general rule as adopted in *Newton* v. *New York, N. H. & H. R .Co., supra,* but held (p. 373) that "the case before us presents an entirely different set of facts; indeed, the physical changes resulting from this improvement are of a most unusual character, and

make the case a clear exception to the general rule." The plaintiff was, in consequence, awarded damages.

In *Warner* v. *New York, N. H. & H. R. Co.* (1913) 86 Conn. 561, 86 Atl. 23, the plaintiff was the owner of land which abutted on Henry Street, in Bristol, which was closed, north of plaintiff's land, by the elimination of a grade-crossing, whereby travel from his land to streets north of the railroad was rendered impossible, except by going south on Henry Street to the next cross street and thence to a new street constructed across the tracks, some distance east of Henry Street. Although, here, the complaint did not show that the grade, character and serviceability of the street adjacent to the plaintiff's premises was affected by the change, and access to and egress from his land could be had as freely as ever, so far as that portion of Henry Street was concerned, it did appear that access therefrom to the system of streets in one direction (north of the railroad tracks) was so affected as to put the property on a *cul de sac,* as in the *Yacht Club* case, and the plaintiff claimed that this consideration entitled him to the benefit of an exception to the general rule and a consequent right of recovery, as had been accorded in that case. Regarding this contention, the court says (p. 565): "But the situation in which the plaintiff here is placed is in no true sense analogous to that in which the Yacht Club found itself after the highway changes affecting its property were completed. Access to the highway in front and in one side direction was entirely taken away from it, and only an apology of a means of approach through a narrow passage inadequate for ordinary modern travel leading in the opposite side direction was left it. We characterized the changes thus wrought as most unusual ones, and in view of their character determined that they called for exceptional treatment

in the interest of justice. In this connection it should be borne in mind that these changes deprived the property-owner of all means of direct access in front to the main highway, and thus worked an injury to the easement of access the effect of which is discussed in the *Newton* case. p. 427 *et seq.* The true analogy to the present situation . . . is to be found in the last named case, and the rule to be applied is the one of general application there stated." It is evident, therefore, that *Park City Yacht Club* v. *Bridgeport* is not to be regarded (as the present appellee contends and the trial court construed it in ruling upon the demurrer) as adopting or supporting the doctrine, accepted in some States, that if access is cut off in one direction by the closing of the street between the lot and the next intersecting street, leaving the lot in a *cul de sac,* that fact alone is sufficient to entitle the lot-owner to compensation. 20 Corpus Juris, p. 703; 1 Lewis on Eminent Domain (3d Ed.) § 202.

The principle which we have quoted from *Atwood* v. *Partree, supra,* is at the root of the general rule which was applied in the *Newton* and *Warner* cases and the same rule is applicable to the present situation. Here, as in the latter case, "the action of the defendant of which the plaintiff complains has not resulted in closing, obstructing, or impairing for use the highway adjacent to his premises. Neither the grade, character, nor serviceability of the street at that point has been affected. Access to and egress from his land can be had as freely as ever. The sole ground upon which he rests his claim for recovery is that highway access has been rendered more inconvenient than it was, in that a more circuitous route must be taken in approaching or leaving the property in one direction." p. 563. The situation presented is essentially similar to that in the *Newton* and *Warner* cases, in the latter

of which it was held (p. 564) to be impossible to differentiate these two cases in matters of substance, and the principle, laid down in the *Newton* case, was held to be applicable, viz: "that where highway changes result from public improvements, undertaken in the exercise of the reserved governmental powers known as the police power, occasion a landowner no other damage than to render access to his land more inconvenient than it formerly was, by reason of a more circuitous route being required to be taken, he has no right of action."

Although the doctrine may seem rather harsh as applied to certain cases, there are persuasive practical reasons on which it rests. *Davis* v. *County Commissioners,* 153 Mass. 218, 224, 26 N. E. 848; 1 Lewis on Eminent Domain (3d Ed.) § 202, p. 378; *Levee District No. 9* v. *Farmer,* 101 Cal. 178, 35 Pac. 569. See also *Clark* v. *Saybrook,* 21 Conn. 313; *O'Brien* v. *Norwich & Worcester R. Co.,* 17 Conn. 371. Those cases, of which *Park City Yacht Club* v. *Bridgeport* is a conspicuous example, where the circumstances causing the injury are special and peculiar to the plaintiff, as where, as in that case, access to the highway in front of his premises is destroyed or materially interfered with, call for and justify "exceptional treatment in the interest of justice" permitting a recovery therefor. The facts alleged in the present complaint are not of such special and peculiar character. Although the plaintiff may have more occasion than others to make use of the highway and consequently suffer more inconvenience or other injury, yet his injury does not differ in nature, but in degree only. Though the right may be of greater use or benefit to him than to others, it is a common right, created in the same way, for the same purposes, and of the same duration. He could be afforded recovery only by a radical departure from the

settled policy evinced by our decisions on the sub-
ject, through the adoption of a rule that the leaving
of premises in a *cul de sac* is, of itself, sufficient to
entitle the owner to compensation.

There is error, the judgment is set aside and the
cause is remanded with direction to the Superior Court
to sustain the demurrer.

In this opinion the other judges concurred.