[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case comes to the court on remand from our Supreme Court. Bolanv. Avalon Farms Property Owners Association, Inc., 250 Conn. 135 (1999) (en banc). That Court concluded it was the expressed intention of the parties to the defendant's deeds "to create an access easement over that property in favor of the landlocked property that now belongs to the plaintiff." Id. At 142-43. The underlying facts and procedural history are fully recited therein and only such findings as are necessary to this court's determination are here repeated. The case was returned for a new trial limited solely "to a determination of the extent and nature of the plaintiffs easement." Id. at 147.
Trial was conducted on February 23, 2000, at which time various witnesses testified and numerous exhibits were offered. Trial briefs were submitted by both parties. CT Page 10529
The plaintiff is the owner of a landlocked parcel of land consisting of 161 acres and which is identified on plaintiffs exhibit 2 as "Parcel C"[1]; it is shown on plaintiffs exhibit 12 that property north of and contiguous to the centerline of an old road discontinued by the town of Litchfield, Connecticut, in 1926; the property is noted there as "N/F Charles H. Phinney".
The plaintiff claims:
 1. an easement or right of way which, as shown on defendant's subdivision map D18-sheet 13 (plaintiff's exhibit 12), is contiguous with her southerly property line and extends westerly to a point at the furthest northwest corner (thus running along the centerline of the discontinued road shown there through areas denoted by the legends "This Area Reserved for Open Space Access Area for Landlocked Abutters" and "Open Space Conservation"); and
 2. the right to travel by foot or vehicle for all purposes as well as the right to install and maintain full utility service over or under the easement area.
The defendant claims the easement is limited:
 1. to that portion only of the above strip which is denoted by the legend "This Area Reserved for Open Space Access Area for Landlocked Abutters" (See plaintiffs exhibits 12 and 2.) and which is contiguous only to the southeasterly portion of her land a narrow corner which separates her property's southeasterly corner (shown on these exhibits as adjacent to the Keeney property) and Old Mt. Tom Road; and
 2. in its use to an "old cart path" (so described on plaintiffs exhibit 8 part of the subdivision mapping approved by the town prior to the plaintiffs ownership) and formerly dedicated to cut hay and timber the forest.
The defendant, in its trial brief, argued the plaintiff had presented no evidence at trial to establish either the nature or extent of the easement and premised that argument on the plaintiffs electing to offer no testimony. At trial, the defendant moved to dismiss the case and asserted the plaintiff had not satisfied her burden of proof. The court CT Page 10530 again rejects that argument because the plaintiff offered numerous documents which became full exhibits (none of which was objected to by the defendant) and which constitute "evidence" sufficient to satisfy her burden.
Regarding the "extent" of the easement, the plaintiff argues the fact that the legend "This Area Reserved for Open Space Access Area for Landlocked Abutters" appears at both ends of the open space corridor along the centerline of the discontinued road is evidence the intent was that the southern boundary of the plaintiffs easement is the same as the northern boundary of the defendant's land (south of the discontinued road as seen on plaintiffs exhibit 12). That strip is approximately 3,200+ feet long. The defendant argues this suggestion should be rejected because the southeasterly corner of the Bolan property is within 100+ feet of Old Mt. Tom Road[2] and the plaintiff therefore has no need to use all of that open space corridor to enter or leave her land. Defendant also argues these legends found at both ends of the strips shown on plaintiffs exhibits 11 and 12 are separated by a contiguous 2,800+ feet, which area bears the legend "Open Space Conservation," and posits this difference in language must suggest a different intent and therefore the plaintiffs easement should not extend beyond the area of the legend adjoining her property ("This Area Reserved for Open Space Access Area for Landlocked Abutters"). No testimony was offered in support of that claim. No description of the legends employed exists and no case law is proffered to urge that conclusion. To suggest the plaintiffs position cannot be accepted because she failed to offer specific evidence the legends should be given the same meaning ignores the plain meaning of the words "open space" in each notation. It also ignores the testimony of defense witness, Michael Engels, the land surveyor who drew most of the Avalon Farms subdivision mapping and who became involved with Avalon Farms in the early seventies. He stated he did not know whether the word "access" (as found at the two ends of the strip shown on sheet 12 of the subdivision maps) was a word of art and that there was nothing in his file which pinpointed either the area of access or the meaning to be attached to that word. He did not believe "access" was a word he personally chose to use in the notations and added that, when he inserted the legend, he had not been told the purpose the legend was intended to serve. He therefore undermined the defense argument the plaintiffs easement was only in that area which includes the words "Access Area for Landlocked Abutters" and then only to that area contiguous to the southeasterly corner of the Bolan property.[3]
The Supreme Court has defined as "easement of access" such as it has already determined was here created to mean "an abutting landowner's right of ingress, egress, and regress . . ." Bolan, supra, at 142, citingKachele v. Bridgeport Hydraulic Co., 109 Conn. 151, 153 (1929). This CT Page 10531 easement is memorialized by the notation referenced above at both ends of the old discontinued road shown on the subdivision maps. It is described in general terms and nothing either in the legend of the maps or the deeds from DiNardo or Gold Key in any way restricts the right of way as urged by the defendant.[4] To conclude therefore that the plaintiffs easement is confined only to that portion of the dividing line contiguous to her property is not only to attach meaning to silence but also ignores that the owner of the defendant's property when the mapping of the subdivision was accomplished in 1977 (by DiNardo's predecessor in title) had the opportunity to expressly limit the right of way by a legend that made clear the boundaries of the easement but failed to do so. The deeds evidence the same failing.
It is so as the defendant argues that the town, as part of the subdivision approval process, imposed several restrictions on the use of the land. See plaintiffs 14 Declaration of Restrictions Covenants, January 5, 1978. It is also the case that the deeds to the plaintiff (the deed from John Bolan to his wife, this plaintiff; and the Certificate of Demise of September 15, 1989, from Phinny to Bolan) were subject to all of the laws, ordinances, and governmental regulations which restricted the occupancy or use of the land to include the character, size, or location of any improvements to be erected on the land both then and thereafter. Thus, the property is also subject to the Zoning Regulations for the Town of Litchfield then in effect (plaintiff's 1) and the applicable Subdivision Regulations (defendant's exhibit D). It is, as the plaintiff argues, appropriate to look to the language of the regulations to determine what constitutes reasonable and legally sufficient access. The zoning regulations were intended "to provide for the highest and best use of land . . ." (plaintiffs 1- Preamble). The property in question is located in the R-160 zone which permits, as of right, such uses as single family dwellings, farms, etc.; by special permit, it permits stables, kennels, and outdoor recreational facilities (plaintiffs 1, Art. IV, § 4). Residential lots must be at least 160,000 square feet (3.673 acres) and interior building lots lacking the required 300' of street frontage (clearly possible here given the size of this parcel) are permitted by special exception in the R-160 zone provided these lots have driveway access to a "common driveway" (as defined by § 6.5.1 of the Subdivision Regulations). Under the town's zoning regulations, no fewer than two nor more than six lots are permitted to use a common driveway (plaintiffs 1, Art. VI, § 5B); see also defendant's D, § 6.5.1. That "common driveway" must have a right of way 50' wide, a travel surface of pavement or gravel 18' wide, and two 2' shoulders on each side (defendant's D, § 6.7). Under § 6.17 of the Subdivision Regulations, there must be underground utility service within the right of way unless it is determined to be inappropriate or not feasible. Thus, we know the Bolan property is so located and of sufficient size CT Page 10532 that the local planning and zoning commission could approve six building lots each of at least 160,000 sq. ft. in this rural residential area and that the Subdivision Regulations authorize an access area 50' wide with a private common drive 18' wide and two 2' shoulders on each side. It can hardly be argued this use of the plaintiffs property is less than reasonable or not intended when the defendant's own regulations expressly authorize the same.
Our Appellate Court has, subsequent to Bolan, held that Bolan should be applied retroactively to other cases then pending on its docket. Perkinsv. Fasig, 57 Conn. App. 71, 75-76 (2000). See, e.g., D'Addario v.Truskoski. 57 Conn. App. 236 (2000); Mandes v. Godiksen, 57 Conn. App. 79
(2000). This state's highest court has not only forsaken the unity of title doctrine as an impediment to determining the intent of the party creating the easement but it has loudly signaled its intention to take a practical approach to rights of way reserved for the benefit of adjacent landowners. The current direction of the law is to afford the owner of property the full enjoyment and use of the land so long as that right of way is not overburdened. See, e.g., D'Addario, supra, at 246-47. "For centuries our law has held that no person shall be denied the beneficial enjoyment and use of land because it is not accessible."57 Conn. App., at 247. The law does not presume that, when one conveys land to another, it is with the intention that the grantee could derive no benefits from the conveyance. Id. at 244.[5]
The deeds to the defendant (from DiNardo and Gold Key) are expressly "subject to such public utility lines and/or easements as may affect said premises" (plaintiffs 5 and 6). It is not restricted to those "as may of record appear." It is reasonable to conclude it was contemplated that public utilities might affect the access and open space areas both then and in the foreseeable future. Such uses as are permitted by the subdivision and zoning regulations (and incorporated by reference in the defendant's mapping and in its deeds) are reasonable and foreseeable uses of the land. Both a common accessway 50' wide which runs the length of the northerly edge of the access and open space area shown on plaintiffs 12 and contiguous with the plaintiffs southern boundary as well as the use of that access easement for a common driveway of the dimensions referenced in the Subdivision Regulations are minimally burdensome to the defendant's property.
That a landowner is entitled to install overhead or underground utility service as part of an access easement under circumstances similar to those here presented is a conclusion reached by other trial courts in this state. See, e.g., Kudis v. Rochelean, 23 Conn.L.Rptr., No. 4, 137 (Judicial District of New London at Norwich) (1998); Miskin v.Wroblewski, 20 CLR 497 (Judicial District of Hartford/New Britain at CT Page 10533 Hartford) (1997); Stott v. Dvorak, 1994 Ct. Sup. 3744 (Judicial District of New London at Norwich) (1994). In Stott the defendant took title under two deeds, one of which contained no easement language and the other of which (the 1957 deed)[6] granted the defendant "the right to travel by foot or by vehicle over a right-of-way leading from Old Colchester Road to the herein conveyed tract." Id. at 3750. The court considered that easement (which, by its terms, gave the defendant no more than the defendant here argues is all to which this plaintiff is entitled) to be a general one which "is to be construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant."[7] Id. at 3755. The court reasoned, with reference to Connecticut decisional law, that the question whether a particular use was reasonable was fact based and varied from case to case and that a "grant of a thing will include whatever the grantor had the power to convey which is reasonably necessary to the enjoyment of the thing granted."[8] The character of the use of a right of way can change as the use of the dominant tenement evolves.[9] It concluded the language of the deed should be read broadly enough to permit the defendant's installation of utility service. It noted, however, that the language of the deed is only one of several criteria for determining the nature and character of the easement and that courts will additionally consider "the situation of the property and surrounding circumstances" to ascertain the intent of the parties. 1994 Ct. Sup. 3744, at 3754. The "situation" of the plaintiffs property in the instant case is that it is a very large parcel (161 acres) which is landlocked and capable of supporting six very large residences under the applicable zoning and subdivision regulations. It is presently without the means for electrical service. To deprive the plaintiff the right to install such service is to deprive her of that which is clearly necessary to full enjoyment both of the access easement and her land. The nature and extent of the access easement is as follows:
A permanent easement or right of way, in common with others, for access to and from the public highway known as "Old Mt. Tom Road" to and from property of Marie G. Bolan, formerly of Charles H. Phinney, a.k.a Charles H. Phinny, including the right to construct a common driveway, together with the right to install poles and wires or underground conduits for public utilities, to grade, fill, slope, and to install subsurface drainage for said common driveway, as prescribed by the zoning and subdivision regulations of the Litchfield Planning and Zoning Commission and the inland wetlands and watercourses regulations of the Litchfield Conservation Commission, within the premises more particularly described as follows:
Beginning at the northeasterly corner of the premises, at a point in the northerly highway line of CT Page 10534 "Old Mt. Tom Road," labeled "FIELD LOCATION," which point is located 562.86' along the southerly and westerly curvature of said highway line from a point marked by a monument set in said highway line at the intersection of "Old Mt. Tom Road" and "Old Forge Hollow Road"; thence S. 53° 26' 42" W, 211.90', along the southerly boundary of land N/F Dwight E. 
Ellen R. Keeney and land formerly of Charles H. Phinney now of Marie G. Bolan, in part by each; thence the following courses and distances along the southerly line of land of said Bolan: S. 48° 44' 42" W, 513.66'; S. 55° 48' 42" W, 486.10'; S. 59° 21' 42" W, 209.61'; S. 70° 58' 42" W, 285.76'; S. 70° 35' 12" W, 154.20'; N. 83° 09' 48" W, 189.00' to a point at the northwesterly corner of said premises; thence turning and running S. 00° 36' 15" W, 50'± along land of said Bolan and/or the City of Waterbury to the southwesterly corner of the premises; thence turning and running on a course parallel with, and 50.00' distant from, the northerly line of said premises, the following courses and distances: S. 83° 09' 48" E, 200'± N. 70° 35' 12" E, 165.70'; N. 70° 58' 42" E, 290.68'; N. 59° 21' 42" E, 216.25'; N. 55° 48' 42" E, 490.74'; N. 48° 44' 42" E, 466'± to a point in the northerly highway line of "Old Mt. Tom Road" at the southeasterly corner of the premises; thence turning and running along the curvature of said highway line, N. 42° 26' 46" E, 152'± to the northeasterly corner of the premises, being the point and place of beginning.
Meaning and intending to describe herein an easement or right of way, 50.00' in width at all points, running parallel with and southerly of; the "CENTERLINE OF OLD ROAD" as shown on a survey map entitled "SECTION 1 PORTION SECT. 2 AVALON FARMS RT. 202 LITCHFIELD, CONNECTICUT SCALE 1" = 100' DATE: AUG, 1977 EMPIRE ASSOCIATES INC. PLAINVILLE, CONNECTICUT" prepared by Michael J. Engels, L.S. No. 7755, filed in the office of the Litchfield Town Clerk as Map D18-13, said easement to be located in that area shown on said map as "THIS AREA RESERVED FOR OPEN SPACE ACCESS AREA FOR LANDLOCKED ABUTTERS" and "OPEN SPACE CONSERVATION." CT Page 10535
 Said easement shall be adjacent and appurtenant to land of Marie G. Bolan, shown as "PARCEL `C' CONTAINS 161 ACRES ± SEE `FIRST PIECE' — VOL. 119, P. 451" as described on a survey map entitled "MAP SHOWING PARCELS OF LAND BELONGING TO CHARLES H. PHINNY A.K.A. CHARLES MAYHEW PHINNY OF LITCHFIELD, CONNECTICUT SCALE: 1" = 200' MARCH 21, 1977 DOUGLAS G. LITTLE, ENGINEER LAND SURVEYOR SHEET — 2 OF 2", and described as the "First Piece" in a Quit Claim Deed from Thomas A. Bolan to Marie G. Bolan dated October 6, 1989 and recorded October 16, 1989 in Volume 201 at Pages 1092-93 of the Litchfield Land Records.
 Subject to any and all laws, ordinances, and governmental regulations, restricting, regulating, or prohibiting the occupancy, use or enjoyment of the land and regulating the character, size or location of any — improvements now or hereafter erected on said land.
Sheedy, J.