408 P.2d 450

Roy E. MOSMAN, Prosecuting Attorney in and for the County of Nez Perce, Idaho, Plaintiff-Respondent,

v.

Wendell MATHISON, Roberta Mathison, his wife, Nelson Howard, Madeline Walter and the Cramont Scenic Highway District, Defendants-Appellants.

No. 9485.

Supreme Court of Idaho.

Nov. 24, 1965.

Rehearing Denied Dec. 21, 1965.

Blake, Givens & Feeney, Lewiston, for appellants.

Roy E. Mosman, Pros. Atty., Nez Perce County, pro se, and Donald K. Worden, Jr., Deputy Pros. Atty., Lewiston, for respondent.

McFADDEN, Justice.

Plaintiff Roy E. Mosman, as the prosecuting attorney of Nez Perce county, instituted this action against the defendants seeking a declaration that the road known as Wapsheli road is a public road and also to enjoin defendant Mathison and his agents from obstructing the use of the roadway by the public.

The defendants, (other than the Cramont Scenic Highway District) are the owners or lessees of property through which the Wapsheli traverses, and the Cramont Scenic Highway District is a highway district situate in Nez Perce County, and within which this road is situated.

The trial court, sitting without a jury, heard the cause and entered findings of fact, conclusions of law and decree. The findings of fact are in substance as follows:

That plaintiff Mosman was the prosecuting attorney of Nez Perce County and in-

stituted the action on behalf of the people of the county and the state; that Wapsheli Road, as described in the findings, is situated in the county. The road was described by its course through various sections and townships, but without any description as to its boundaries or widths; that the description adequately apprised the defendants of the subject of the action; that a dispute arose whether it was a public road; that the road was built with public funds in 1948 and for at least six years following was maintained with public funds; that the road was used by the public as a public road for a period of thirteen years; that the road lies within the boundaries of the district, and that defendant Mathison or his agents have obstructed the road and have prevented free access and have claimed it to be a private road; that Mathison is a director of the district and is the owner and lessee of lands bordering the road, and the other individuals named as defendants are owners of or claim an interest in the lands bordering the road.

Further the court found:

"VI. That an attempt was made to have the Directors of the Cramont Scenic Highway District abandon the said road, but the matter was never lawfully, effectively voted upon; that the Minutes of this Meeting of the Directors of the Cramont Scenic Highway District do not accurately reflect the action of the Board."

The court also found that certain gates erected across the road were maintained as a matter of convenience to the land owners to serve as cattle guards and were not maintained with the thought in mind that the road could thus be made a private road.

Based on the findings of fact the court concluded:

"1. That the road as described supra in the Findings of Fact is a public road.

2. That the attempted abandonment failed.

3. That a permanent injunction should issue, restraining Wendell Mathison, and/or his agents, servants, and employees from interfering with the free access of the public to the road.

4. That plaintiff is entitled to be reimbursed for costs necessarily incurred herein."

The judgment then described the road, declared it to be a public road, restrained defendant Mathison or his agents from interference with the public's right of free access to the road, and awarded plaintiff the costs incurred in the action.

Prior to answering the complaint, the defendants filed their motion to dismiss, which the court denied.

The defendants have appealed from the judgment of the court and by their specifications of error assert the trial court erred in failing to grant their motion to dismiss; that the trial court erred in each of its findings of fact (except as to the one that Mathison was a commissioner of the district and the individual defendants owned or leased lands bordering the road); that the court erred in each of its conclusions of law and also erred in entering the decree.

The one issue that is determinative of this appeal is whether the commissioners of the Cramont Scenic Highway District did in fact and in law abandon the Wapsheli road. The record reflects that in January, 1961, there were three commissioners of this district, i. e., defendant Mathison, John Luy and John Taylor. On January 12, 1961, a meeting was held in the office of the attorney for the district at Lewiston, the county seat of Nez Perce County. As to what transpired at the meeting the three commissioners testified as follows:

Mr. Luy, called as a witness by the plaintiff, testified on direct examination that he was a commissioner of the district, and that the abandoning of the Wapsheli road was discussed. He stated:

"Q. Who brought it up?

A. Well, I think Jim [Mr. Givens, attorney for the defendant] and Wendell [Defendant Mathison] brought it up and it was brought to a vote.

Q. When they brought it up, what did they do? What did they ask to be done?

A. To close it.

Q. And was there a discussion regarding that proposal?

A. Yes.

Q. Can you say what you said in regard to the proposal?

A. I said if the land owners would pay for the amount of money spent on the road I would go along with the closure.

Q. The money that was spent by whom?

A. In previous years, by the district.

Q. Did this matter ever come to a formal vote?

A. Not other than that, just a discussion there, and that was the end of it. It was talked about off and on, but that is the furtherest they ever went while I was there.

Q. Did anybody ever move that the Wapsheli grade road be abandoned from the Cottonwood Creek to the Salmon River?

A. Well, not to my knowledge."

On cross examination, Mr. Luy testified,

however, that when the matter was brought to a vote, "I wouldn't go for the closing."

Mr. Taylor, called as a witness for the defendants, testified on direct examination as follows:

"Q. Mr. Taylor, I would like to direct your attention to the date of January 12, 1960, and I will ask you if on or about that date you had occasion to attend a meeting of the commissioners of the Cramont Scenic Highway District at my office here in Lewiston, Idaho?

A. I recall having a meeting about that time in your office, Yes.

Q. And will you state to the Court who was present at that time, if you recall?

A. Myself, Wendell Mathison, John Luy and Jim Givens.

Q. Were the respective capacities of the people you have named yourself, Luy and Mr. Mathison the commissioners of the Cramont Scenic Highway District and was I the attorney representing the district at that time?

A. Yes, you were.

Q. And at that meeting, Mr. Taylor, can you state to the Court whether or not the commissioners had a discussion, among other things, about the ridge road and the Wapsheli road within the Cramont Scenic Highway District boundaries?

A. Yes, we had a discussion on the Wapsheli road.

Q. And as a result of that discussion was any action taken or any decision made by the commissioners with respect to the Wapsheli Creek road?

A. On this meeting, it was decided and agreed to abandon, go on record as abandoning the Wapsheli grade road.

Q. Was this action the unanimous action of the board?

A. As I recall, I did not have to use my vote to break any tie or deadlock.

*      *      *      *      *      *

A. On this particular meeting, I believe was in regards to closing this road. It was more or less a special meeting and I believe at this one that I had brought in the report for 1959 at this time and I specifically asked that there be something about the abandonment of this road. We discussed it. There was quite a lengthy meeting, as I recall, and there was a little talk at first of—well, we

will say of whether it was feasible to have Howards reimburse the district for the amount of money that was spent on that. I recall that one instance, but I believe we was advised that there was no way the Howards or anybody else could buy public lands that there had been work done on without advertising it like that. As I recall, there was not no disagreement on anybody's part that we should not abandon the road.

Q. Was it your recollection that all of the commissioners at that time agreed to and did abandon this road?

A. When you specifically asked each commissioner to abandon the road, to agree to abandon the road, they were all agreeable, yes.

Q. And it was their act at that meeting to abandon the road, is that correct, sir?

A. Right.

Q. Was this act of the commission unanimous? Did all of the commissioners agree to do this?

A. They all agreed to it, yes."

On cross-examination Mr. Taylor testified:

"Q. * * * Was there ever any motion to abandon that road made at that meeting?

A. I do not recall any motion by partlimentary rules, no.

Q. Was there ever any formal vote taken either by voice or raising hands? Was there a vote taken?

A. You mean by yea or nay?

Q. Yes sir.

A. As I remember, not exactly to those words.

*   *   *   *   *   *

Q. You abandoned this road from the Cottonwood Creek fort to the Salmon River. Do you know where the abandonment starts?

A. I have an idea, yes.

Q. Where is Cottonwood Creek fort?

.A. I do not know where the Cottonwood Creek fort is.

Q. You don't know where the abandonment started? ·

A. I know where the abandonment starts, yes.

Q. But it didn't start where you said it started in these minutes.

A. I think fort and fork could be misunderstood in reading to be misinterpreted as the same word."

The instrument referred to is exhibit 36, an unsigned copy of "Minutes of Commissioners Meeting, December 12, 1960, Cramont Scenic Highway District," wherein it is recited:

"A discussion was had of the Cottonwood Creek road and the Warshilla [Wapsheli] grade road. Following said discussion, upon motion, duly made, seconded and carried, the Commissioners voted to abandon the Cottonwood Creek road and to likewise abandon the road from the Cottonwood Creek For*t* to Salmon River."

Defendant Mathison, one of the highway district commissioners at the time in question, testified as to the abandonment of the road, as follows:

"Q. Mr. Mathison, I would like to direct your attention, if I may, to at or about the 12th of January, 1960, and I will ask you if you attended with the other two commissioners of the Cramont Scenic Highway District a meeting held in my office here in Lewiston, Idaho?

A. Yes, we did.

Q. And I will ask you, Mr. Mathison, if at that time you and the other commissioners discussed the Wapsheli road?

A. Yes, we did.

\*     \*     \*     \*     \*     \*

Q. And at the meeting were all of the commissioners present?

A. They was all present, yes.

Q. Who were the three commissioners?

A. John Luy, John Taylor and myself.

Q. As a result of this discussion and this meeting was any action taken by you as commissioners of the Cramont Scenic Highway District with respect to the Wapsheli Creek road?

A. We chose to abandon the road, close it. We all agreed.

Q. Was that the unanimous decision of the commissioners present?

A. Yes, it was."

Appellants both in the trial court and in this court have contended that there was a valid meeting of the Board of Commissioners of the highway district, held on January 12, 1960, and that I.C. § 40–1614, which at that time (Such section having been subsequently amended S.L.1963, Ch. 218,) provided:

"The highway board shall have power to receive road petitions and lay out, alter, create and abandon public highways within their respective districts, subject to an appeal therefrom to the

district court of the judicial district in which such highway district is situated, in the same manner in which appeals are taken from the board of county commissioners to the district court."

They assert that this provision authorized them to abandon the Wapsheli road.

■ The verb "abandon", means "to cease to assert or exercise an interest, right, or title to, especially with the intent of never again resuming or reasserting it," (Webster's New International Dictionary, 3rd Ed.), "to desert, surrender, forsake, or cede. To relinquish or give up with intent of never again resuming one's right or interest. To give up or to cease to use. To give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert. It includes the intention, and also the external act by which it is carried into effect." (Black's Law Dictionary, Fourth Ed.) And it is in that sense that the I.C. § 40-1614 employs the term, with the right to "abandon" being in the persons in control of the district; the right to abandon the road is in the hands of the Commissioners, not in the public as where a road is not worked or used for a period of five years, as provided by I.C.

§ 40-104 (before it was amended S.L.1963, Ch. 267).

Based upon I.C. § 40-1614, appellants contend that no appeal was taken from the action of the board of commissioners provided by I.C. § 31-1509 [1], and that no appeal having been taken from such action of the board no collateral attack, as is being attempted in the instant cause, can be maintained.

■ Respondent counters this contention by asserting that defendant Mathison had a personal interest in the abandonment of the Wapsheli road as it traversed property owned or leased by him, and that by reason of his personal interest he was disqualified from sitting on or voting on any such proceedings to abandon such road, citing 67 C.J.S. Officers § 116, p. 406; Nampa Highway District No. 1 v. Graves, 77 Idaho 381, 293 P.2d 269, and cases from other jurisdictions. While respondent's assertion in other instances may be correct, such is not applicable here. Under the provisions of I.C. § 40-1614, as it existed at that time, it was within the power of the board of highway district commissioners to abandon the road in question, subject, however, to the right to appeal from such abandonment. It is undisputed in the record that at the

---

1. I.C. § 31-1509 "Any time within twenty (20) days after the first publication or posting of the statement, as required by section 31-819, an appeal may be taken from any act, order or proceeding of the board, by any person aggrieved thereby, or by any taxpayer of the county when any demand is allowed against the county or when he deems any such act, order or proceeding illegal or prejudicial to the public interests; * * * "

meeting of the board at least two of the commissioners approved the abandonment, i. e., Mr. Mathison and Mr. Taylor. The qualifications of Mr. Mathison to participate in voting upon that question becomes an issue collateral to the issue of whether there was or was not an abandonment. The determination of an administrative board, such as this one, is not subject to collateral attack in cases where the determination is not void on its face, not tainted with fraud, and is within the power of such board. 2 Am.Jur.2d 299, Administrative Law, § 493.

While we adhere to the proposition that public officials are under a duty to exercise their powers justly and without influence by reason of any direct interest, as pointed out in Nampa Highway District No. 1 v. Graves, supra, yet the ultimate object of Chapter 16 of Title 40 must be considered. This law requires the commissioners to be elected from the subdistricts by the electors. By I.C. § 40–1611, they are given exclusive general supervision and jurisdiction over all highways in their district for construction and maintenance, and, at the times herein involved, were authorized by the sections to levy taxes, receive funds and disburse them for the authorized purposes. Of necessity each time that any maintenance work or construction work is done by their order, each of the commissioners will be affected thereby by improvement in the highways or roads within the district and by the requirement of payment of taxes.

The obligations of the highway commissioners to administer the affairs within the area of their district brings into focus an exception to the rule that a member of such board becomes disqualified from acting by reason of interest in the result of the actions, and which exception is the so-called rule of necessity. The courts generally recognize that when the members of the only tribunal with jurisdiction to act are disqualified by reason of bias, prejudice, or interest, still such tribunal is not prohibited from acting, where such disqualification would prevent a determination of the proceeding. 1 Am. Jur.2d 862, Administrative Law, § 66; Annot.: 39 A.L.R. p. 1476. Such exception is also recognized as being applicable to administrative officers, commissioners, commissions, boards and other bodies. Annot.: 39 A.L.R. 1476, at 1479.

The record shows by plaintiff's exhibits 17, 18, 19, that after the January 12, 1960 meeting, and for the years of 1960, 1961, 1962, and by defendants' exhibit 21 for the year 1963, maps submitted to the State Highway Department no longer disclosed the existence of the Wapsheli road as being a district road, although plaintiff's exhibits 15 and 16, being maps submitted for the previous years of 1958 and 1959, show the road as being a district road.

By the provisions of I.C. § 40–1621, a district board of highway commissioners is required to submit annually by February

1st, a report of the condition of the work, construction, maintenance and repair of the highways in the district, accompanied by a map thereof. These reports must be submitted to the Idaho board of highway directors, and also to the board of county commissioners. It is to be presumed that the various exhibits disclosing the status of the highways for the years of 1958 through 1963 inclusive, were submitted in accordance with this statutory requirement. American Fruit Growers v. Walmstad, 44 Idaho 786, 260 P. 168; Monson v. Boyd, 81 Idaho 575, 348 P.2d 93, and cases cited therein.

The proposition contended for by respondent is hardly applicable in the instant cause for the following reasons: Assuming, for the sake of argument, but not deciding, that Mathison, by reason of his interest in the land bordering the highway was disqualified from voting, and also assuming that Commissioner Luy voted against closure, was the action by the board in abandoning the road actually void or merely voidable? If the action was void, and such invalidity was self evident, the abandonment would have been subject to collateral attack. If the abandonment was voidable only, it would not be subject to collateral attack, and the only remedy would be by the way of direct attack under the provisions of I.C. § 40–1614. Rogers v. Hayes, 3 Idaho 597, 32 P. 259; Bobbitt v. Blake, 25 Idaho 53, 136 P. 211; School District No. 25 v. Rice, 11 Idaho 99, 81 P. 155; Clay v. Board of County Commissioners, 30 Idaho 794, 168 P. 667; Udy v. Cassia County, 65 Idaho 585, 149 P.2d 999; Harrison v. Board of County Commissioners, 68 Idaho 463, 198 P.2d 1013. An action for declaratory judgment and injunction as is this cause, has been held to be a collateral attack in N. H. Lyons & Co. v. Corsi, 3 N.Y.2d 60, 163 N.Y.S.2d 677, 143 N.E.2d 392, 145 N.E.2d 885.

The fact that the minutes of the January 12, 1960 meeting were not signed by the secretary thereof is no controlling moment. Unlike the cases of People ex rel. v. Toledo, St. L. & W. R. Co., 270 Ill. 472, 110 N.E. 723 (1915), and Pearl Realty Co. v. State Highway Commission, 170 Miss. 103, 154 So. 292 (1934), where legislative enactments required the keeping of minutes, there is no general statutory requirement for the keeping of minutes by the board of highway commissioners; the provisions of I.C. § 40–1607, only require that the minutes must show what bills are submitted, considered, allowed or rejected, and I.C. § 40–1611, provides that an order of the board entered upon its minutes that the land sought to be condemned is for public highway purposes, shall be prima facie evidence of that fact.

It has been held that an order vacating a street or abandoning a highway, passed or made by the public authority invested with

the authority for such purpose, acting under and in substantial compliance with the provisions of the statute has all the force and effect of a judgment, and irregularities not jurisdictional in their character will not invalidate the vacation or render it subject to collateral attack. Enders v. Friday, 78 Neb. 510, 111 N.W. 140, 15 Ann.Cas. 685 (1907); Levee District No. 9 v. Farmer, 101 Cal. 178, 35 P. 569, 23 L.R.A. 388 (1894).

It is our conclusion that the record shows that at a meeting held January 10, 1961, at which all the highway district commissioners were present the Wapsheli road was abandoned, and that such action of the board was reaffirmed by submission thereafter of annual reports to the Idaho board of highway directors, indicating the road was no longer a part of the Cramont Scenic Highway District road system; that no appeal was taken from the action of such board, and any defects in the proceedings or disqualification of the board members cannot now be raised by a collateral attack.

The record fails to show that the county ever assumed jurisdiction of the Wapsheli road; certain exhibits reflect that a survey of the "Wapsheli road", was ordered by the Board of county commissioners, and by minute entry of the board of county commissioners that the Wapsheli road was opened. However, these same exhibits indicate that the portion of the road so surveyed and opened ended at a point lying north of the portion of the road involved herein.

While numerous other issues have been presented by appellants' specifications of error, by reason of the conclusions reached, such issues are now of no concern and they will not be discussed.

The judgment of the trial court is reversed and the cause remanded to enter judgment for the appellants.

Costs to appellants.

McQUADE, C. J., and TAYLOR, SMITH and KNUDSON, JJ., concur.