448 P.2d 645

E. H. NICOLAUS, Robert E. Sanner, Charles
H. Wilson, and others, Plain-
tiffs-Respondents,

v.

Roy BODINE, Manuel Schneidmiller and
William Cranston, Individually and as
purported Commissioners; and Post Falls
Road District, a public corporation of the
State of Idaho, Defendants-Appellants.

No. 10226.

Supreme Court of Idaho.

Dec. 12, 1968.

Hawkins & McCabe, Coeur d'Alene, for appellants.

Scott W. Reed, Coeur d'Alene, for respondents.

SPEAR, Justice.

The issue presented is whether a Road District is obligated to repair an unsafe bridge within its jurisdiction when said bridge has not been properly abandoned. Our conclusion is that the bridge must be repaired.

This is a class action by plaintiffs, residents of the south side of the Spokane River in the Post Falls Road District. The defendants are commissioners of the district. On September 5, 1967, a written petition was presented to the defendants, pursuant to I.C. § 40–803, requesting repairs on the Greens Ferry bridge. On September 11, 1967 the defendants voted to close the bridge and on September 13, 1967 it was closed. On September 15, 1967 this suit was filed, seeking to enjoin closure of the bridge and to obtain relief in the nature of mandamus to compel the making of necessary repairs.

In a trial of the cause the district court, sitting without a jury, found that the Greens Ferry bridge was an important access for residents of the south side of the Spokane River and that closure of the bridge left only a "barely passable mountain road." Thus the only means of getting to the nearest town of Post Falls, where the people of Greens Ferry generally shopped and their children attended school, was to drive east on this "barely passable" back road, north on highway 95, through the city of Coeur d'Alene, and thence west on highway 10 to Post Falls. This entailed, in all, a drive of about an hour, as opposed to one of a few minutes across the bridge.

The trial court then concluded that although the Greens Ferry bridge had been properly closed for safety reasons, appellants were under a mandatory duty, imposed by I.C. § 40–803, to repair and maintain the bridge. Therefore, since this bridge was necessary and not properly abandoned, or subject to abandonment under the existing circumstances, the court ordered it repaired.

The first objection raised by appellants questions the trial court's construction of the duties imposed by I.C. § 40–803 [1]. However, the language of this section is clear and unambiguous. "If the road overseer * * * fails to make the needed repairs after being informed that the bridge is * * * unsafe * * * the board of commissioners *must* cause the same to be repaired." (emphasis added) When a highway district exists, such as the Post Falls Road District,

> "The highway commissioners in such highway distirct * * * have * * * jurisdiction over all highways within their district * * * and * * * have * * * all the powers and duties that would by law be vested in the county commissioners of the county and in the road district overseers if such highway district had not been organized * * *." I.C. § 40–1611. See also I.C. § 40–1666.

Since bridges are included within the definition of highways, I.C. § 40–107 [2], it devolves upon the commissioners of the highway districts, such as appellants herein, to execute the obligations of I.C. § 40–803. When " * * * informed that the bridge is * * * unsafe * * * [the highway commissioners] * * * *must* cause

the same to be repaired." (Emphasis added.)

In the absence of some manifestation to the contrary we must assume the legislature intended the ordinary import of the words it used. Florek v. Sparks Flying Service, Inc., 83 Idaho 160, 359 P.2d 511 (1961). The word "must" in a statute usually imposes mandatory duties. Merchants' Credit Service v. Chouteau County Bank, 112 Mont. 229, 114 P.2d 1074, 1076 (Mont. 1941), citing State ex rel. O'Connor v. McCarty, 282 P. 1045, 1048. See also In re Shafter-Wasco Irrigation District, 55 Cal.App.2d 484, 130 P.2d 755 (1942).

Furthermore, interpretation of the word "must" to impose an absolute duty, is consistent with the history of bridge repair, and the history of I.C. § 40–803. Under the early common law, even in the absence of a statute, the county was under an obligation to properly maintain its bridges. County Commissioners v. Chandler, 96 U.S. 205, 209, 24 L.Ed. 625 (1877); 39 Am.Jur. 2d, Highways, Streets, and Bridges, § 81 (1968). Idaho adopted the common law and the language which is used in I.C. § 40–803, when it became a state. This same statute originally appeared as section 949 of the Revised Statutes of Idaho Territory, effective June 1, 1887. The same language, in all respects, has been retained throughout this section's history, in spite of many amendments and re-enactments of statutes governing roads, highways, bridges and their administration.

Appellants contend that this mandatory duty of repair interferes with their power to abandon bridges, as conferred by I.C. § 40–1614 [3], and denies the liberal in-

---

1. I.C. § 40–803. *Petition for repair of bridge.*—If the road overseer of any road district, chargeable with the repair of a bridge, fails to make the needed repairs after being informed that the bridge is impassable or unsafe, and is requested to make the same by two or more taxpayers of the district in which it is situated, or the two districts which it unites, the taxpayers may represent the facts to the board of commissioners, who upon being satisfied that the bridge is unsafe, must

cause the same to be repaired and must pay therefor from the road fund.

2. I.C. § 40–107. *Highways defined.*—Highways are hereby defined as roads, streets, alleys and bridges laid out or established for the public or dedicated or abandoned to the public. * * *

3. I.C. § 40–1614. *Powers of highway commissioners.*—The highway board shall have power to receive road petitions and lay out, alter, create and abandon pub-

terpretation of their powers as commanded by I.C. § 40–1615.[4] However, the exercise of administrative discretion cannot be totally free of proscription, and I.C. § 40–1614 itself recognizes this principle by providing for judicial review of a decision to abandon a highway or a bridge, as that term is incorporated in the definition of a highway. I.C. § 40–107, supra.

, Since, in the area of highway administration, the highway district commission assumes the duties of the county commissioners, I.C. § 40–1611, supra, abandonment must be effectuated pursuant to I.C. § 40–501 [5]. Not only is abandonment of highways and bridges authorized under this section, but I.C. § 40–501 *requires* that they be abandoned, *if they are unnecessary*. Such abandonment must be effected by "ordinance," which in this context means some formal action. St. Louis Southwestern Ry. Co. v. Naples I. School Dist., 30 S.W.2d 703, 705 (Tex.1930), citing American Construction Co. v. Seelig, 104 Tex. 16, 133 S.W. 429. Such formal action must be publicized as provided in I.C. § 31–819 [6] and appeals are

lodged as provided for in I.C. § 40–1614, supra, incorporating by reference I.C. § 31–1509 through I.C. § 31–1512, the provisions for appeals from action of the county commissioners.

In summary then, an unsafe bridge *must* be repaired, unless it is unnecessary. If a bridge no longer is necessary, a finding to that effect, with reasons, must be made by the commissioners. That decision must be published, and it is then subject to review by the district court to the same extent as is action by the county commissioners.

Here the trial court found that the appellants had closed the bridge without any intention of reopening it. This was an abandonment in fact, but not in law. The means by which abandonment was accomplished denied respondents their right of appeal as provided in I.C. § 40–1614. Respondents then sought to preserve their rights through a writ of mandamus, historically the means of testing arbitrary refusal of performance of official duty. Davies v. Board of County Commissioners, 26

lic highways within their respective districts, subject to an appeal therefrom to the district court of the judicial district in which such highway district is situated, in the same manner in which appeals are taken from the board of county commissioners to the district court; * * *.

4. I.C. § 40–1615. *Grant of powers to be liberally construed.*—The grant of powers in this chapter contained to highway districts and to highways boards and the officers and agents there, shall be liberally construed, as a broad and general grant of powers, to the end that the control and administration of such districts may be efficient; * * *.

5. I.C. § 40–501. *Duties of county commissioners.*—The board of county commissioners, by proper ordinances, must:
  1. Divide the county into a suitable and convenient number of road districts.
  2. Cause to be surveyed, viewed, laid out, recorded, opened and worked, such highways as are necessary for public convenience, as in this chapter provided.
  3. Cause to be recorded as highways such roads as have become such by use or abandonment to the public.

  4. Abolish or abandon such as are unnecessary.

6. I.C. § 31–819. *Publication of proceedings.*—To cause to be published monthly such statement as will clearly give notice to the public of all its acts and proceedings, and, annually, a full statement of the financial conditions of the county together with a statement of the receipts of the county and source thereof, and an itemized account of expenditures. Such statements as well as all other public notices of proceedings of, or to be had before the board, not otherwise specially provided for, must be published in one (1) issue of such newspaper printed and published in the county as will be most likely to give notice thereof; and when no newspaper is published in the county, copies of such statement must be kept posted for at least twenty (20) days in three (3) public places in the county, one (1) being in a conspicuous place at the courthouse door.

Idaho 450, 143 P. 945 (1914); State v. Industrial Commission of Ohio, 162 Ohio St. 302, 123 N.E.2d 23 (1954). The trial court, having found the appellants' action in refusing to repair the bridge was violative of the statutory safeguards, proceeded to do no more than it was obligated to do on an appeal from the commission's action. I.C. § 31–1512 provides for de novo review. Fisher v. Board, etc. of Bannock, 4 Idaho 381, 39 P. 552 (1895). See Common School Dist. No. 58 v. Lunden, 71 Idaho 486, 233 P.2d 806 (1951).

The question presented was whether the Greens Ferry bridge was unnecessary. The trial court was forced to make a determination of necessity on the evidence submitted, without the aid of any previous findings by the appellants. Competent evidence disclosed, and the court found, that closure of the bridge forced an average of 644 vehicles per day to take a long circuitous trip over a poor road or, in some cases, to entirely avoid driving into Post Falls. As the trial court observed, "it can hardly be said the [bridge] is unnecessary." In the absence of an alternative which is substantially as satisfactory as the Greens Ferry bridge when it is in proper condition, this bridge cannot be deemed unnecessary. Nor can the mandatory obligations of I.C. § 40–803 be avoided or the discretionary power of I.C. § 40–501 be exercised on the basis of prospective intentions. The condition or alternate facility which would make this bridge unnecessary and thus subject to abandonment must exist now or be so imminent that any further expenditure on the present facility would serve no useful purpose or would amount to a duplication of services. This test is not satisfied by the presently indefinite and unfinanced plans which appellants have for construction of a new bridge to replace the Greens Ferry bridge.

Judgment affirmed. Costs to respondents.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.