64 P.3d 304

Patrick J. FARRELL, Jr. and Kathleen D. Farrell, husband and wife, Plaintiffs–Respondents,

v.

BOARD OF COMMISSIONERS OF LEMHI COUNTY, Idaho, governing body of a political subdivision of the State of Idaho; Fraser M. Madill; James B. Madill; Elizabeth Susan Madill Jones; Mary Anne Madill; Margaret J. Madill; Patrick Madill; Paula Mentzer; Mary M. Madill, Defendants–Appellants,

and

Wayne England and Margaret England, husband and wife, Thomas B. Riley and Lee Anne Hutcheson Riley, husband and wife; Thomas Eugene Black; Frederick C. Lyon; Jeanne James; Donald E. Boyle, and John Does 1–10 and Entities A–Z being unknown persons or entities claiming an interest in real property owned by Plaintiff in Lemhi County, Defendants,

and

Friends of Indian Creek Road, Intervenor Defendant–Appellant.

No. 27546.

Supreme Court of Idaho, Pocatello, 2002 Term of Court.

Dec. 27, 2002.

Rehearing Denied March 3, 2003.

Givens Pursley, LLC, Boise, for appellant. Christopher H. Meyer argued.

Millemann, Pittenger, McMahan & Pemberton LLP, McCall, for respondent. Steven J. Millemann argued.

SCHROEDER, Justice.

This is a quiet title action in which a ranch owner seeks to quiet title to a portion of Indian Creek Road in Lemhi County. On cross-motions for summary judgment the district court granted the ranch owner's motion.

## I.

### FACTUAL BACKGROUND

This action was brought by James Bower, who owned the Indian Creek Guest Ranch (Guest Ranch). However, he sold the Guest Ranch to Patrick J. Farrell, Jr. and Kathleen D. Farrell who have been substituted. Collectively, Bower and the Farrells are referred to as the "Ranch Owners." The Ranch Owners brought a quiet title action against the Lemhi County Board of Commissioners and various named and unnamed property owners uproad from the Guest Ranch. Eight of the owners are named Madill and are referred to collectively. A group called Friends of Indian Creek Road sought to intervene. Their motion was denied. Lemhi, the Friends of Indian Creek and the Madills are referred to collectively as the "Road Users."

The Road Users maintain that Indian Creek Road is the only convenient means of access to "numerous" properties uproad from the Guest Ranch. The Ranch Owners have blocked the road, and it is falling into disrepair. However, the U.S. Forest Service has committed to repair the road if it is declared public. The Road Users also assert that 32,000 acres of National Forest land can be accessed by the road which they say is used

by hunters, fishers, hikers, snowmobilers and explorers. The Road Users assert that there is only one other road to those Forest Service lands, which is much more difficult to pass and blocked by snow much of the year. The Ranch Owners claim that there are three roads providing alternative access to the upstream properties, although they admit that they are less preferable due to their length and steepness.

The parties agree that the original road was constructed circa 1901 by three miners, who filed a petition that year with Lemhi County quitclaiming and allowing the County to accept it as a County road. Later, homesteaders settled the public lands around the road. The plats describe Indian Creek Road crossing the properties.. Three of those homestead patents now constitute the 119–acre Guest Ranch. The Ranch Owners state that the plat was never converted into a metes and bounds survey, and that there is no recorded document with the Lemhi County Recorder's office establishing, laying out or claiming the Indian Creek Road as a County Road.

## II.

## PROCEDURAL BACKGROUND

The Ranch Owners filed their complaint to quiet title on November 6, 1996. After discovery, various parties filed summary judgment motions on road creation and abandonment issues. Those motions were disposed of in four memorandum decisions.

On August 4, 1998, Bower and the Chairman of the Lemhi County Board of Commissioners signed a stipulation for settlement. The Madills objected, but the district court denied their motion to invalidate the County's stipulation. However, on July 26, 1999, Lemhi County adopted a resolution declaring the stipulation unauthorized and void. The County then joined in attempting to set aside the stipulation. The district court denied a motion for reconsideration by the Madills on the stipulation issue. Subsequently, the district court ruled against Road Users on the stipulation issue. That decision disposed of the cross-motions and also denied the Friends of Indian Creek's motion to intervene and submit affidavits.

The Madills filed their last motion for reconsideration on the single issue of whether the 1901 road acceptance had been recorded. The district court ruled against them. The Madills dropped their claim for a private easement across the Guest Ranch, which allowed the District Court to enter its final judgment. The district court awarded the Ranch Owners attorney fees against Lemhi County for defending against the motion to set aside the stipulation agreement. The Road Users filed their joint notice of appeal.

## III.

## STANDARD OF REVIEW

The Road Users maintain correctly that the same standard of review should be used by this Court as the trial court when reviewing the grant of a summary judgment motion. *Stafford v. Klosterman,* 134 Idaho 205, 998 P.2d 1118 (2000). However, they argue that the trial court erred in basing its memorandum decisions on discretion. They also maintain that the parties did not rely on the same facts in their respective motions for summary judgment, so the Court cannot treat the case as if it were based on stipulated facts. However, they concede that the essential facts are not in conflict.

The Ranch Owners respond that not all appellants have standing to raise all of the issues in the appeal, maintaining that the Madills have standing to raise the public road issues; the Friends have standing to address intervention; and the County has standing on the settlement stipulation issue and attorney fees. Further, they assert that the proper standard of review was employed by the trial court and that a de novo standard is proper for the review of the summary judgment decision as well as for the attorney fee issue. However, they argue that the stipulation and intervention issues were decided in the trial court's discretion and should be reviewed under an abuse of discretion standard.

### A. Standard of Review for Motion to Deny Entry of Judgment

 The district court determined that when a request to deny judgment based on a stipulation signed by two other parties is before the court the request is for the equitable remedies of injunctive and declaratory relief which are within the court's discretion. Regardless of this characterization, the district court made determinations that there were no material issues of fact as to the County's interest in the road, and that as a matter of law the County had no interest in the road, and that even if it did, that interest was abandoned. The district judge used a summary judgment motion standard despite discussing discretion. On this question there appear to be no issues of material fact. Therefore, this Court will exercise free review to determine if there was a valid contract.

### B. Motions for Reconsideration

The Ranch Owners argue that the District Court's Memorandum Decisions on the Motions to Reconsider should not have been made based on the discretion. There is little effect to this argument since the underlying issue is whether the motion for summary judgment should have been granted.

### C. Standard of Review for Cross–Motions for Summary Judgment

 When this Court reviews the district court's ruling on a motion for summary judgment, it employs the same standard as the district court's original ruling on the motion. *Farmers Ins. Co. v. Talbot,* 133 Idaho 428, 431, 987 P.2d 1043, 1046 (1999) (citing *Smith v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 714, 718, 918 P.2d 583, 587 (1996); *City of Chubbuck v. City of Pocatello,* 127 Idaho 198, 200, 899 P.2d 411, 413 (1995)). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Mutual of Enumclaw v. Box,* 127 Idaho 851, 852, 908 P.2d 153, 154 (1995).

### D. Standard of Review for Motion to Intervene and Admission of Affidavits

 The procedural decision to grant a motion to intervene is governed by Rule 24 of the Idaho Rules of Civil Procedure, and "a trial court's decision to grant or deny a motion to intervene is a matter of discretion." *Western Community Ins. Co. v. Kickers, Inc.* 137 Idaho 305, 306, 48 P.3d 634, 635 (2002). The district court applied Rule 24 and correctly deemed that it had discretion to determine intervention and admission of affidavits under I.R.C.P. 56(c).

### E. Standard of Review for Attorney Fees Issue

The district court properly decided the request for attorney fees against Lemhi County under Idaho Code § 12–117, which applies to "civil judicial proceeding[s] involving as adverse parties a state agency, a city, a county or other taxing district and a person." This Court has established that review of § 12–117 attorney fees shall be decided by free or de novo review. *See Rincover v. State Dept. of Finance, Securities Bureau,* 132 Idaho 547, 549, 976 P.2d 473, 475 (1999).

### F. Standing

 The standing argument is a fine point that does not merit much discussion. Counsel for the Madill family wrote the briefs on behalf of all appellants and served as co-counsel to the other appellants for purposes of this appeal. At least one appellant has standing on each issue raised in the appellants' brief, which point the Ranch Owners concede. All issues may be heard even if an individual issue may only relate to one appellant. That all appellants may not have standing as to all issues in a brief written on behalf of all appellants is of no consequence if at least one appellant, as is the case, has standing for each issue argued.

### IV.

### A PUBLIC ROAD WAS CREATED

There are three potential theories identified in this case under which a public road or right-of way could have been created: 1) the federal statute creating "R.S. 2477" roads, 2)

the 1901 road creation statute, 3) common law declaration.

## A. Federal Statute

The federal statute creating R.S. 2477 roads provided that "[t]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C.A. § 932 (1866) (repealed 1976). While this statute has been repealed, otherwise valid leases, permits, patents and similar rights created under it are valid if they existed before October 21, 1976. Pub.L. 94–579, § 706(a) (1976). To be valid it must be shown that the local government accepted the road from the federal government. This Court explained in *Kirk v. Schultz*, 63 Idaho 278, 282–83, 119 P.2d 266, 268 (1941), that in order for there to be an acceptance of a congressional grant of a right-of-way for a public highway under this statute, "there must be either user [sic] by the public for such a period of time, and under such conditions as to establish a highway under the laws of this State; or there must be some positive act or acts on the part of the proper public authorities clearly manifesting an intention to accept such grant with respect to the particular highway in question." Under R.S. 2477 a public road may be created under the state road creation statute or where there is a positive act of acceptance by the local government. The *Kirk* case is not explicit as to whether the second approach is independent of the state statute or if both of the two requirements for R.S. 2477 roads are reiterations of the requirements as already found in the state statute. The difference is important since the second method requiring any "positive act" is more lax than the requirements set forth in the state road creation statute. Considering the language in *Kirk* it appears that there are two separate methods and that a positive act of acceptance need not be coextensive with the road creation statute.

## B. An "R.S. 2477" road was created.

The Board of County Commissioners' minutes stated in 1901 that "be it resolved by the Board that the dedication of same [Indian Creek Road] be and the same is hereby accepted, and it is hereby ordered that said above described road be added to and made a part of Road District No. 11 and said road with plat as presented be recorded as provided by law." The petition from the miners is pasted in the old leather-bound County book, and the minutes are there as well. There was a clear manifestation of an intent to accept the road.

## C. A common law dedication of the land did occur.

The record also establishes that a road was created by common law dedication. The elements of a common law dedication as established in *Pullin v. Victor* are "(1) an offer by the owner, clearly and unequivocally indicated by his words or acts evidencing his intention to dedicate the land to a public use, and (2) an acceptance of the offer by the public." 103 Idaho 879, 881, 655 P.2d 86, 88 (Ct.App.1982). The court in *Worley Highway District v. Yacht Club of Coeur D'Alene, Ltd.*, found that "[t]he act of filing and recording a plat or map is sufficient to establish the intent on the part of the owner to make a donation to the public." 116 Idaho 219, 224, 775 P.2d 111, 116 (1989) (quoting *Boise City v. Hon*, 14 Idaho 272, 279, 94 P. 167, 168–69 (1908)). The second element—acceptance of the offer by the public—"is not evidenced by the subjective intent of purchasers of property whose instruments of title make specific reference to a plat, but rather by the fact that lots had been sold or otherwise conveyed with specific reference to the apposite plat." *Id.* at 225, 775 P.2d at 117.

There are two separate conveyances at issue here to which appellants claim the doctrine of common law dedication applies: the 1901 transaction between the miners and the County and the subsequent homestead patents granted by the federal government. However, the 1901 petition by the miners and quitclaim was not a common law dedication. A common law dedication requires that the offeror be an "owner" of the land, and the miners had no ownership interest in the unreserved federal land. Therefore the petition for dedication and

quitclaim is not a valid common law dedication.

The second transaction, however, is a valid common law dedication of the road. The federal government was the owner of the land, and it filed and recorded a valid plat. That is sufficient under *Worley* to show intent on the part of the owner to dedicate public areas of the plat. The district court decision on this issue cited *Nesbitt v. Demasters*, 44 Idaho 143, 255 P. 408 (1927), for the proposition that a valid common law dedication offer and description must be clear and certain. That the road was clearly marked and labeled on the plat and patent is sufficient to create an offer to dedicate a public road. In a case where the roads are not yet built and the plat is part of a subdivision plan, it makes more sense to require a metes and bounds type of description, but where, as here, there is already a road in existence and labeled and marked on the map, the offer requirement is met.

Furthermore, the grant of homestead patents constitutes a valid acceptance of a common law dedication. In *Worley* this Court reversed a trial judge for incorrectly looking to the intentions of the purchaser to determine if the purchaser intended to accept the government's implied offer of dedication. 116 Idaho at 225, 775 P.2d at 117. In this case the fact that a plat was validly filed and patents sold referencing the plat and the road constitutes common law dedication. In *Smylie v. Pearsall*, the court stated that "[w]hen an owner of land plats the land, files the plat for record, and sells lots by reference to the recorded plat, a dedication of public areas indicated by the plat is accomplished. This dedication is irrevocable except by statutory process." 93 Idaho 188, 191, 457 P.2d 427, 430 (1969). The patents were granted to the homesteaders with reference to the valid plats and with the Indian Creek Road marked and labeled. There was a common law dedication of the road independent of the intent of the homesteaders.

## V.

## INDIAN CREEK ROAD HAS NOT BEEN ABANDONED

Until 1963 the primary statute relevant to abandonment of a public road provided that "[a] road not worked or used for the period of five years ceases to be a highway for any purpose whatever." Idaho Code § 1139 (1901). Therefore, there is a dual requirement of both non-maintenance and non-use for a five-year period for abandonment. *Taggart v. Highway Bd. For N. Latah Cty.*, 115 Idaho 816, 817, 771 P.2d 37, 38 (1988). As to the level of use required to prevent a finding of abandonment, a showing of "any continuous use no matter how slight, by the public, is sufficient." *Id.* at 818, 771 P.2d at 39. Once a public road has been established, the burden shifts to the one claiming that the road was abandoned to prove such abandonment. *See Floyd v. Board of Comm'rs*, 137 Idaho 718, 52 P.3d 863 (2002).

The district court expressly considered the issue of maintenance but did not address the issue of non-use in the same manner, apparently with the idea that a lack of maintenance was indicative of a lack of use. However, the two concepts are not co-extensive.

Road Users point to three depositions that show use of Indian Creek Road starting in about 1932.[1] These depositions indicate at least minimal road use for each five-year period from 1930 forward. Road Users say that Ranch Owners do not dispute that there was no use before 1930. Ranch Owners, however, do dispute that issue, and point to a Forest Service Report from January 4, 1929 for evidence of non-use prior to 1930. The report recognizes the existence of a road and appears to have been made in contemplation of making another road.[2] It

---

1. Wayne England says in his deposition that he went to school a quarter mile up Indian Creek Road in 1932 with 10–20 other students and in 1934 he and his family drove up that canyon in a flatbed truck to hunt grouse. From those years on, depositions provided by Ranch Owners appear to show that there was at least some use for each subsequent five-year period to present.

2. Some statistics for the road are given twice: the statistic as of "now" and the statistic projected "after [a new] road is built."

provides the following description of Indian Creek Road in 1929: "This road is washed out, rutted, sliding, has broken bridges and high centers. However it is passable to automobiles." The report estimated the number of one-way trips by Forest Service Officers on the road as twenty, and the number of annual automobile one-way trips as two. The report provides other indirect indications of road use, such as an estimate of ten campers per year and an estimate of five tons of freight hauled per season. These uses presumably must make use of the road to some degree. The report is unclear as to how many years the statistics can be applied; it speaks in terms of road use "now," and so applying its statistics to the entire 1901–1930 period may be inaccurate. However, once a right of way or public road is proven the burden of showing abandonment of that road by non-use and non-maintenance is on the party asserting abandonment. The Ranch Owners rely on the Forest Service Report and the fact that the road was realigned as evidence that the road was not used. They have not met their burden of showing non-use for the entire period in question.

■ After 1955, the Ranch Owners allege that the road was not used because it was relocated by the Forest Service. The parties are at odds as to the extent of realignment, but they both concede there was at least some realignment and that the road has always had the same termini and followed the same creek. The Ranch Owners based the majority of their non-use abandonment claim on the non-use of the portions of the road abandoned because of realignment. Abandonment of the old portions of a realigned road, however, is not evidence of non-use or abandonment for the realigned new road unless the changes actually change the identity of the road originally laid out. *See Central Pac. Ry. Co. v. Alameda County*, 284 U.S. 463, 467, 52 S.Ct. 225, 226, 76 L.Ed. 402, 404–05 (1932). That did not happen in this case.

## VI.

## THE INFORMAL ABANDONMENT STATUTE IS NOT APPLICABLE TO PUBLIC ROADS CREATED THROUGH COMMON LAW DEDICATION

■ The passive abandonment statute has been repeatedly held inapplicable to "dedicated streets and alleys set out in recorded plats." *Boise City v. Fails*, 94 Idaho 840, 846, 499 P.2d 326, 332 (1972). It might be argued that this rule should not apply to dedicated roads that are not a street or part of a formal city plat. However, in *Worley*, this Court found that a road could not be abandoned under the passive abandonment statute where the road was not clearly part of a formal city plat and indeed where a public road had never been built where the plat specified. 116 Idaho at 221, 227, 775 P.2d at 113, 119. The holding in *Worley* affirms that roads not designated as streets in an urban city plan are also not subject to the passive abandonment statute if they are properly dedicated. The Court also noted that the "irrevocable character of a common law dedication is not affected by the fact that the property is not at once subjected to the use as designed. The public exigency requiring the use of the property may not arise for years." *Id.* at 227, 775 P.2d at 119 (citations omitted). Therefore, even if the Indian Creek Road were not developed by the County, the passive abandonment statute would not apply where there has been a common law dedication.

## VII.

## THE COUNTY HAS NOT ABANDONED INDIAN CREEK ROAD BY FORMAL ACTION

■ Both parties concede that abandonment of Indian Creek Road could have been effected by formal action under Idaho Code § 40–501 (1948), which states that "[t]he board of County commissioners, by proper ordinances, must: ... (4) Abolish or abandon such [public roads] as are unnecessary."[3] In

---

3. Ranch Owners argue alternatively that former Idaho Code § 40–133(d) gave such authority, which is a 1951 replacement of section 40–501. It provided that the County board of commis-

sioners "[h]ave authority to abandon any road and remove it from the County highway system, when such action is determined by the board of County commissioners to be in the public inter-

*Nicolaus v. Bodine,* 92 Idaho 639, 642, 448 P.2d 645, 648 (1968), this Court held that "proper ordinances" for abandonment required "formal action" by the board, which includes a finding to the effect that the road is no longer necessary, as well as publication.

■ In 1951 the Highway Administration Act was passed which required counties to identify which roads were part of the County Road System, which was defined as "all public highways in a County except those included within the State Highway System, those included within municipal street systems of incorporated cities and villages, and those under federal control." 1951 Idaho Sess. Laws, Chapter 93, Section 4(b), codified as Idaho Code section 40–109(b) (1961). Indian Creek Road was not color-coded as a County road on any of these subsequent County road inventory maps. Apparently there is also a prosecutor's opinion that is referenced in County board minutes reflecting the opinion that the road was abandoned. To constitute formal abandonment under *Nicolaus,* however, there must be a finding by the board that the road is unnecessary—or, under the subsequent statute, that it is in the public interest—which is nowhere alleged by either party.

In 1985 the County rejected a request by the owner of a lot from a homestead patent to perform maintenance on the road. The prosecutor's opinion is not in the record, but the County commission minutes refer to it and the prosecutor's opinion that the road had been abandoned. This action does not rise to the level of formal action contemplated by *Nicolaus* and the formal abandonment statute, which would require a finding that the abandonment was in the public interest. *See* Idaho Code § 40–604(4) (1985) (abandonment action by commissioners allowed when "determined to be in the public interest").

There is no evidence of such a finding in this case, and the only formal action taken by the County was to reject a request for maintenance.

Ranch Owners cite *Mosman v. Mathison,* 90 Idaho 76, 408 P.2d 450 (1965), as authority for a valid abandonment under these circumstances. In *Mosman,* the issue was whether the commissioners of the Cramont Scenic Highway District had abandoned a road pursuant to Idaho Code § 40–1614 where the highway district commissioners had voted to abandon the road and such abandonment was corroborated by the absence of the road on subsequent annual reports listing highway district roads.[4] However, *Mosman* is inapplicable. First, I.C. § 40–1614, upon which the court made its decision, does not contain the requirement of a finding that a road is in the "public interest" and thus the interpretation of section 40–1614 is not binding on the 1985 equivalent of § 40–501 and *Nicolaus's* requirement of formal action by means of a finding.[5] Second, in *Mosman* the highway district commissioners held a meeting and voted on the issue of abandonment, whereas here the decision was only as to a petition for maintenance.

## VIII.

## THE VALIDITY OF THE STIPULATED SETTLEMENT

■ The Road Users argue that the stipulation for settlement was unauthorized because there was no public hearing and no vote of the County Commissioners. They maintain that the signature and authorization by the County Chairman was not sufficient for valid County commission action, and that neither was the Chairman's belief that he had commission consensus after informal dis-

---

est." The only meaningful addition is a requirement that abandonment be in the "public interest." It is therefore probably even more demanding than the original statute.

**4.** The 1985 equivalent of section 40–1614 provides: "Powers and duties of highway district commissioners.—... (5) The highway district has the power to receive road petitions and lay out, alter, create and abandon public highways within their respective districts, subject to appeal to the district court of the judicial district in

which the highway district is situated, in the same manner in which appeals are taken from the County commissioners to the district court." Idaho Code § 40–1310(5) (1985).

**5.** The 1985 equivalent of section 40–501 provides: "Commissioners shall ... (4) [h]ave authority to abandon any highway and remove it from the County highway system when that action is determined to be in the public interest." Idaho Code § 40–604(4) (1985).

cussion. The Ranch Owners respond that the stipulation meets the Idaho Code requirement for records of County Commissioners, namely that such records need only "be signed by the Chairman and the Clerk," Idaho Code § 31–707 (1996), to be valid. They argue that the County's compliance with the statute requiring County action to be in their minutes is not a prerequisite to the validity of the acts and proceedings of the Board, citing *Sims v. Milwaukee Land Co.*, 20 Idaho 513, 119 P. 37 (1911). The Ranch Owners maintain that the Road Users will not deny that there was consensus, and that a stipulation should generally be upheld, and may be vacated only if good cause is shown and all parties can be placed in the same position they were in before the stipulation, which they say is impossible because of the easements granted in reliance on the stipulation.

 Generally, "[s]tipulations for the settlement of litigation are regarded with favor by the courts and will be enforced unless good cause to the contrary is shown." *Conley v. Whittlesey*, 126 Idaho 630, 634, 888 P.2d 804, 808 (Ct.App.1995). The stipulation in this case was entered into by a County, and County commission action is "presumed valid until the contrary is shown." *State v. Clark*, 88 Idaho 365, 377, 399 P.2d 955, 962 (1965). To be facially valid, a County board record "must be signed by the chairman and the clerk." Idaho Code § 31–707. Also, "[t]he board must cause to be kept ... [m]inute records, in which must be recorded all orders and decisions made by them, and the daily proceedings had at all regular and special meetings." Idaho Code § 31–709(1).

The stipulation agreement is facially valid. The County Chairperson signed the stipulation on August 4, 1998, and it was attested to by the County clerk. The burden, then, is on the Road Users to show that the stipulation is void or that otherwise there is good cause for this Court not to enforce the agreement.

The absence of minutes on the record regarding a County board decision to quitclaim all property interest in the Indian Creek Road to Ranch Owners does not by itself invalidate the stipulation agreement. The Idaho Code requires the County clerk to record in the minutes all "orders and decisions" that the County board makes. However, this Court held in *Sims v. Milwaukee Land Co.*, 20 Idaho 513, 119 P. 37 (1911), that the lack of recorded minutes regarding a County action does not invalidate that County action. In that case, a ferry operator had obtained a business license from the County board of commissioners to operate his ferry. The court stated:

> If the applicant did those things required of him by law in making his application for a license, and upon doing so the board had issued to him a license, he could not be denied the rights conferred upon him by the license by the mere failure of the board to record the minutes showing such proceedings, and the license upon its face was sufficient, in the first instance, to show his right to construct and maintain the ferry, and, if the respondent under its answer was able to show that the plaintiff had not complied with the law, then that was a matter of defense.

*Id.* at 524, 119 P. at 40. In this case the absence of minutes regarding a County board transaction does not by itself invalidate the stipulation. The County action is presumed valid, yet subject to other defenses. Those defenses exist. It appears that the stipulation was a product of proceedings in violation of the open meeting laws.

The general Idaho open meeting laws are found at I.C. §§ 67–2340 to 67–2347. Idaho Code section 67–2342(1) provision states, "[A]ll meetings of a governing body of a public agency shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by this act. No decision at a meeting of a governing body of a public agency shall be made by secret ballot." The term "meeting" is defined as "the convening of a governing body of a public agency to make a decision or to deliberate toward a decision on any matter." I.C. § 67–2341(6). The term "decision" is defined as "any determination, action, vote or final disposition upon a motion, proposal, resolution, order, ordinance or measure on which a vote of a governing body is required, at any meeting at which a quorum is present...." I.C. § 67–2341(1).

The code section defining the specific responsibilities and duties of the county board of commissioners also provides an open meeting requirement: "All meetings of the board [of county commissioners] must be public, and the books, records, and accounts must be kept at the office of the clerk, open at all times for public inspection, free of charge. The clerk of the board must give five (5) days' public notice of all special or adjourned meetings, stating the business to be transacted, by posting three (3) notices in conspicuous places, one (1) of which shall be at the courthouse door." I.C. § 31–710(4).

Idaho Code § 67–2345, however, provides for "executive sessions" which need not be conducted in public under the following circumstances: [6]

(1) Nothing contained in this act shall be construed to prevent, upon a two-thirds (2/3) vote recorded in the minutes of the meeting by individual vote, a governing body of a public agency from holding an executive session during any meeting, after the presiding officer has identified the authorization under this act for the holding of such executive session. An executive session may be held:

. . . .

(c) To conduct deliberations concerning labor negotiations or to acquire an interest in real property which is not owned by a public agency;

. . . .

(f) To consider and advise its legal representatives in pending litigation or where there is a general public awareness of probable litigation;

. . . .

(3) No executive session may be held for the purpose of taking any final action or making any final decision.

█ The statutory sections at issue here imply that a majority vote is required in a public meeting before the county may stipulate to entry of judgment. The decision to stipulate to judgment in this case was alleg-

edly made by "consensus," but not at a public meeting. Settlement of this litigation is a decision that required a vote for county action. I.C. § 67–2341(1).

One of the duties of the county clerk is to "[r]ecord the vote of each member on any question upon which there is a division, or at the request of any member present." I.C. § 31–708. Also, a code section referring to the county board of commissioners states that a "majority of the board constitutes a quorum," and it would not make sense to define a quorum unless it were necessary for board action. I.C. § 31–706. Finally, as the highway district may defend suits against it "in the name of the highway district," I.C. § 40–1310(6), any action carried out in such litigation should require a quorum so that such action in defending suit is truly "in the name of" the highway district, or county commission board in this case.

The "executive session" exception is inapplicable because (1) no vote was made in a regular meeting to authorize such an executive session and (2) no "final action" or "final decision" may be made in such a non-public meeting.

## IX.

### THIS LAWSUIT WAS BROUGHT IN VIOLATION OF THE PROCEDURES SET OUT IN IDAHO CODE § 40–203

Road Users argue that the district court erred by ignoring the procedures required for the abandonment of public rights-of-way as codified at I.C. § 40–203, asserting that the district court circumvented these requirements by finding no public road and pre–1963 abandonment.

### A. Standard of Review

█ The trial court determined the inapplicability of I.C. § 40–203 in the first memorandum decision, and reiterated and expanded this finding in the decisions that followed, including the decision that decided the summary judgment motion. As the question of

---

**6.** The Court of Appeals held that I.C. § 67–2345 was in direct conflict with section 31–710(4)'s requirement for public meetings, but found that § 67–2345 trumps when they are in conflict as it

was passed later in time. *Nelson v. Boundary County*, 109 Idaho 205, 208, 706 P.2d 94, 97 (Ct.App.1985).

whether the abandonment statute is applicable is relevant to the summary judgment issue of whether the road is public or was abandoned, the decision to apply I.C. § 40–203 is reviewed on the same basis that the grant of summary judgment is reviewed, namely, de novo review.

### B. Idaho Code § 40–203 applies to the stipulation agreement.

The trial court determined that the requirements of I.C. § 40–203 were not applicable as Indian Creek Road was not a public road, and even if it was that it was abandoned before 1963 when the road abandonment procedures were first put into place. However, this Court has determined the road was a public road and was not abandoned prior to 1963. Consequently, the procedures outlined in § 40–203 apply to any claims of abandonment between 1963 and 1998.

### X.

### THE DISTRICT COURT DID NOT ERR IN DENYING THE FRIENDS OF INDIAN CREEK TO INTERVENE AND OFFER EVIDENCE

#### A. Standard of Review

▮▮▮▮ This Court reviews a trial court's decision on a permissive motion to intervene under an abuse of discretion standard. *State v. United States,* 134 Idaho 106, 109, 996 P.2d 806, 809 (2000). The framework for determining whether the trial court properly exercised its discretion is set forth in *Sun Valley Shopping Center v. Idaho Power Co.:*

> [T]he sequence of our inquiry is: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). "On appeal the appellant carries the burden of showing that the district court committed error. Error will not be presumed but must be affirmatively shown on the record by ap-

pellant." *Western Community Ins. Co. v. Kickers Inc.,* 137 Idaho 305, 306, 48 P.3d 634, 635 (2002) (citations omitted).

### B. The denial of the motion to intervene was not an abuse of discretion.

▮▮▮▮ Rule 24(b) of the Idaho Rules of Civil Procedure provides that permissive intervention may be allowed if in the first place the application is "timely." To determine timeliness, the court considers three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Washington,* 86 F.3d 1499, 1503 (9th Cir. 1996) (quoting *United States ex rel. McGough v. Covington Technologies Co.,* 967 F.2d 1391, 1394 (9th Cir.1992)). The district court found that when intervention was sought, three years had passed since the commencement of the suit and about a year had passed from the County's signing of the stipulation. The court further noted that the case was ready for trial after the summary judgment motion was ruled on and delay would thus prejudice the Ranch Owners. The reason given for the delay—that Friends had relied on the County to protect their interests—was insufficient as Friends of Indian Creek Road were on notice for at least a year, and more likely three, of the litigation. There was no abuse of discretion.

### C. The trial court's denial of the admission of additional affidavits was not an abuse of discretion.

▮▮▮▮ The district court granted the Ranch Owner's motion to strike certain affidavits introduced by the Friends of Indian Creek on the grounds that they were untimely under I.R.C.P. 56(c), they were untimely under the court's scheduling order, and the affidavits contained inadmissible hearsay. These affidavits, however, were admitted into the record for the purposes of entertaining the motion to intervene.

The district court's striking of these affidavits was not an abuse of discretion. The court correctly identified that it had discretion to admit or deny these affidavits. It further decided Rule 56(c) provides that the

trial court may admit untimely affidavits if "good cause" is shown. The court found no good cause to admit the affidavits outside of the briefing calendar, which is a decision within its discretion. Ranch Owners say they needed at least ten months after the stipulation to collect proper affidavits. However, the court found within its discretion that this collection of affidavits could and should have been initiated earlier.

## XI.

## THE AWARD OF ATTORNEY FEES AGAINST THE COUNTY IS VACATED

The County had a justifiable and justified basis for seeking a determination that the stipulation was unauthorized and failed to satisfy the abandonment statute requirements. The award of attorney fees against the County is vacated.

## XII.

## CONCLUSION

The decision of the district court determining that Indian Creek Road is not a public road is reversed. The award of attorney fees against the County is vacated. The appellants are awarded costs. No attorney fees are awarded.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN concur.